David L. Malbin, J.
On June 28, 1956, at or about 8:45 p.m., the defendant was served with a summons charging him with violation of sections 121 and 124 of article 9 of the Traffic Regulations of the City of New York. Section 121 forbids obstructing traffic, and section 124 is concerned with “Advertising Vehicles.”
The circumstances which led to the issuance of the summons are clear and without dispute. The defendant was operating a *443 truck on the body of which was mounted an aerial searchlight five feet in diameter. The details of the manner and the position in which the truck was parked need not be discussed since the court has come to the conclusion that there is insufficient evidence to establish the charge of obstructing traffic. Suffice it to say, that the truck was parked opposite the Roxy Theater at 50th Street and Seventh Avenue in Manhattan, in which was being presented the premiere of the motion picture “ The King and I”. The searchlight’s rays were directed at the marquee and the sky, which to use the defendant’s language, was “ to highlight and glamorize, backdrop the occasion ’ ’.
The question at issue is whether under these circumstances there has been a violation of section 124 of article 9 of the Traffic Regulations, which reads as follows: “ No person shall operate, stand, or park a vehicle on any street, or cause such vehicle to be so operated, stood, or parked, for the purpose of advertising, except that business notices may be put upon commercial vehicles when such vehicles are in use for normal delivery service and not merely or mainly for the purpose of advertising.”
The validity and constitutionality of this regulation is no longer open to attack. It has been sustained by the Court of Appeals and by the United States Supreme Court as a proper exercise of local authority over a local problem. In People v. Railway Express Agency (188 Misc. 342, affd. 297 N. Y. 703, affd. 336 U.S. 106) the Supreme Court, affirming the conviction of the Railway Express Agency for carrying advertising posters on the sides of its trucks, said (pp. 108-109): “ The Court in Fifth Ave. Coach Co. v. New York, 221 U. S. 467, sustained the predecessor ordinance to the present regulation over the objection that it violated the due process and equal protection clauses of the Fourteenth Amendment. It is true that that was a municipal ordinance resting on the broad base of the police power, while the present regulation stands or falls merely as a traffic regulation. But we do not believe; that distinction warrants a different result in the two cases.”
The novel question presented in the instant case is whether the defendant’s vehicle was used “ for the purpose of advertising ’ ’ and was thus within the prohibition of section 124 of the Traffic Regulations. Defendant argues that since the “ vehicle carries no pictures, figures, symbols, words of any kind”, nor does it “ aid in the sale of tickets, products or other intangibles ”, it is not being used for advertising purposes.
This court is aware that the rejection of the defendant’s argument jeopardizes the defendant’s business, and it is with *444 the utmost reluctance, therefore, that this court has been compelled to the conclusion, for the reasons hereinafter set forth, that the truck was used for advertising purposes at the time in question.
The Oxford Universal Dictionary defines “advertise” as follows: “To call the attention of (another); to notify, admonish, or formally warn. Hence, to give notice of, make generally known.”
Funk and Wagnalls New Standard Dictionary’s prime definition is:
“1. To make known by a public notice, especially by print; publish abroad; commend to the public;
“2. To inform or notify; give notice to; advise.”
In these times, when so many movements develop and expand so quickly, there are few fields which have so dramatically enlarged their scope as the field of advertising. Slogans, devices and techniques stemming from the fertile minds of the advertising gentry have penetrated into our daily lives to an almost incredible extent. Whether the result is beneficial or dangerous is not for this court to say. There is no question in the court’s mind, however, that a giant searchlight, casting its rays for a considerable distance through the night sky is a means calculated to " ‘ inform or notify, give notice to ’ ’ and “make generally known ” the event or circumstance toward which it is directed and thus clearly falls into any reasonably acceptable definition of the word “ advertise ”, not only within the letter but within the spirit of the regulation as frequently interpreted.
In People v. Berkowitz (39 N. Y. S. 2d. 236) the court, in convicting the defendant as charged, stated (pp. 238, 239): “ The purpose of the regulation of the commissioner is to prevent congestion on the streets. * * * The purpose and plan of modern advertising is to focus the attention of the public by some startling innovation”. In that case, the “startling innovation ’ ’ was a burro-drawn wagon proceeding down Madison Avenue. While a giant searchlight may lack some of the more picturesque aspects of a team of burros, there is little difference in the results to be anticipated. The purpose which the vehicle no doubt accomplished was to attract and focus public attention and thus give rise to just those consequences which the regulation seeks to avoid.
In People v. Kearns (168 Misc. 264) the court in finding the defendant guilty of violating the statute, said (p. 267): “ The Court of Appeals has said that such vehicles [a vehicle bearing an advertising sign] ‘ would clearly tend to produce congestion *445 upon the streets upon which they were propelled. ’ Possible street congestion, then, is the reason for the regulation.”
In the leading case of People v. Railway Express Agency (supra) it was pointed out that an additional consideration of great importance is the matter of safety. Advertising on vehicles daily using the streets of the city constitutes a distraction to vehicle drivers as well as the pedestrian public and affects the safety of the public in the use of the streets.
Precedent and common sense, therefore, compel the conclusion that the defendant’s vehicle was being used for advertising purposes and that its use and purpose are constituted a violation of section 124 of article 9 of the Traffic Regulations.
Defendant is acquitted on the charge of violating section 121 of article 9 of the Traffic Regulations, and is found guilty of violating section 124 of article 9 of the Traffic Regulations.