375 P.2d 719

**PLANNED PARENTHOOD COMMITTEE OF PHOENIX, INCORPORATED, a non-profit Arizona corporation, Appellant,**

v.

**MARICOPA COUNTY, a political subdivision of the State of Arizona; James G. Hart, James E. Lindsay, and Ruth A. O'Neill, as Members and constituting the Board of Supervisors of Maricopa County; Thomas Sullivan, as Maricopa County Manager; S. F. Farnsworth, as Director of Maricopa County Health Department; Charles Stidham, as Maricopa County Attorney; and State of Arizona, Appellees.**

No. 7309.

Supreme Court of Arizona,

En Banc.

Oct. 31, 1962.

Sheldon Mitchell, Phoenix, for appellant.

Robert W. Pickrell, Atty. Gen., Philip M. Haggerty, Asst. Atty. Gen., Charles Stidham, former Maricopa County Atty., and Charles N. Ronan, present Maricopa County Atty., for appellees.

BERNSTEIN, Chief Justice.

This is a declaratory judgment action [1] brought to test the constitutionality of A.R.S. § 13–213 under the state and federal constitutions. From a judgment of the lower court holding the statute constitutional, the appellant, hereinafter called "plaintiff", has perfected this appeal.

Plaintiff is a non-profit corporation associated with the Planned Parenthood Federation of America, Inc. Its objective is the dissemination of information which would enable parents to plan and space their offspring so as to promote the mental and physical health of mothers and children. It has operated a clinic at Memorial Hospital in Phoenix in which birth control methods and devices were discussed and

I. This action to test the validity of a penal statute is appropriate under A.R.S. §§ 12–1831 and 12–1835, (Uniform Declaratory Judgments Act, §§ 1 and 5); Dill v. Hamilton, 137 Neb. 723, 291 N.W. 62, 129 A.L.R. 743 (1940); Steward v. Robertson, 45 Ariz. 143, 40 P.2d 979 (1935); State v. Borah, 51 Ariz. 318, 76 P.2d 757, 115 A.L.R. 254 (1938). An actual controversy exists because the threat of prosecution by governmental officials has curtailed the activities of the plaintiff, Southern Pacific Co. v. Conway, 115 F.2d 746 (9th Cir. 1940).

234

·explained to persons seeking such information. It has sent out from this clinic to the general public descriptive, educational and informative literature on the subject of birth control. The general public learned of plaintiff's business from, among other sources, referrals made by doctors and nurses working in county medical clinics throughout Maricopa County. At such clinics Planned Parenthood displayed and distributed literature explaining its functions and purposes, and giving information on birth control and contraceptive devices.

It was stipulated by the parties to this case that Planned Parenthood's business activity has been in direct contravention of A.R.S. § 13–213 which states:

"Advertising to produce abortion or prevent conception; punishment

"A person who wilfully writes, composes or publishes a notice or advertisement of any medicine or means for producing or facilitating a miscarriage or abortion, or for prevention of conception, or who offers his services by a notice, advertisement or otherwise, to assist in the accomplishment of any such purposes, is guilty of a misdemeanor."

Because of the existence of this section Dr. S. F. Farnsworth, County Medical Director, issued the following directive:

"Maricopa County Health Department "To: All Division Heads June 17, 1959 "From: S. F. Farnsworth, M. D.

"No information regarding birth control shall be given out by Maricopa County Health Department Personnel during any clinic session.

"No literature or pamphlets in regard to birth control will be displayed or distributed by clinic personnel in any Maricopa County Health Department clinic ·facility.

"Patients who request information regarding birth control or Planned Parenthood clinics may receive such information at the time of PHN [Phoenix Home Nursing] home visits.

"This policy shall be effective as of this date, June 17, 1959."

It was further stipulated by the parties that as a result of the existence of § 13–213 and the issuance of the above directive by Dr. Farnsworth, plaintiff has withdrawn all of its literature from the various county clinics and has curtailed its dissemination and distribution of literature dealing with contraception and birth control. The directive of Dr. Farnsworth has caused a complete stoppage of referrals from the county clinics and Planned Parenthood's business operations have come almost to a standstill. It was also stipulated that Planned Parenthood's discontinuation of a large part of

its business activity was caused by the fact that prosecution under A.R.S. § 13–213 was likely unless such curtailment took place.

Plaintiff's contentions may be summarized under the headings:

(1) A.R.S. § 13–213 is a deprivation of the constitutional freedom of speech and of the press, and imposes a prior restraint and censorship on publishing and advertising activities in violation of the First Amendment of the Federal Constitution as applied to the states by the Fourteenth Amendment thereof, and in violation of Article II, §§ 4 and 6 of the Arizona Constitution, A.R.S.[2]

(2) A.R.S. § 13–213 is an improper exercise of the police power of the state in that it penalizes acts which are not substantive evils, it is arbitrary and unreasonable, and it does not reflect any legitimate legislative or public policy, for which reasons it violates the due process requirements of the Fourteenth Amendment of the Federal Constitution.

■ Before considering the arguments of the plaintiff in support of its contentions it is necessary to examine and construe the statute. It is obvious that the parties cannot, by stipulation, bind this court by the proposition that Planned Parenthood's

activities are in direct contravention of the statute. Cf. Poe v. Ullman, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961). Before deciding whether the statute causes an unconstitutional impairment of plaintiff's freedom of speech we must determine the nature of the infringement which the statute imposes upon the plaintiff's activities.

The two clauses of § 13–213 are both related to advertising. A person who wilfully "writes, composes or publishes a notice or advertisement of any medicine or means * * * for prevention of conception * * *" comes within its prohibition, as does one who "offers his services by a notice, advertisement or otherwise, to assist in the accomplishment of any such purposes * * *."

■ While in its broadest sense, "advertising" includes almost every activity designed to capture the attention of another, we do not think it is to be understood in that broad sense in this criminal statute. The rule of statutory construction, *noscitur a sociis,* directs our attention to the accompanying words as we undertake to learn the meaning to be given to the words "notice" and "advertisement." Thus, the words "writes, composes or publishes" may limit the meaning of "notice" and "advertisement." The words "write" and "compose"

---

2. "Section 4. No person shall be deprived of life, liberty, or property without due process of law.

 \* \* \* \* \*

"Section 6. Every person may freely speak, write, and publish on all subjects, being responsible for the abuse of that right."

connote a more or less formal announcement as contrasted to a person to person referral. The word "publish" used in conjunction with "write" and "compose" strongly implies the utilization of the newspaper or some similar mass media.

" 'To "publish" is to issue, to make known what before was private, to put into circulation. * * * The idea of publicity, of circulation, of intended distribution, seems to be inseparable from the term "publication." ' " Cox v. First Mortgage Loan Co., 173 Okl. 392, 394, 48 P.2d 1060, 1063 (1935).

"In its broad sense, the word 'published' means to make public announcement of, to make known to people in general, to divulge, to disseminate, but in its more restricted sense it means to make public in a newspaper, book, circular, or the like." Underwood v. City of Bellefontaine, 64 Ohio App. 205, 215, 28 N.E.2d 663, 668 (1939).

The word "publish" means to make known to mankind in general, or to people in general, to make public, to send forth, as a book, newspaper, musical piece, or other printed work, either for sale or for general distribution, to print and issue from the press, to utter, or put into circulation. Rizzo v. Zucker, 18 Misc.2d 593, 182 N.Y.S.2d 246 (1958).

When used in connection with words such as those discussed, it is apparent that the word "advertise" or "advertisement" has a limited meaning.

"The verb 'advertise' means ' * * * [t]o give public notice of; to announce publicly, esp[ecially] by a printed notice; as, to advertise a sale; hence, to call public attention to, esp[ecially] by emphasizing desirable qualities, in order to arouse a desire to purchase, invest, patronize, or the like.' " Amsel v. Brooks, 141 Conn. 288, 299, 106 A.2d 152, 158, 45 A.L.R.2d 1234 (1954).

In construing the California statute from which § 13–213 of the Arizona Statutes was adopted, the California Court of Appeals said:

" 'The many uses of the term "advertise," in its various forms, may be found in the Century Dictionary, from which this definition, the one most nearly reaching the facts here, is taken: "The act or practice of bringing anything, as one's wants or one's business, into public notice, as by paid announcement in periodicals, or by handbills, placards, etc., as to secure customers by advertising." ' " People v. McKean, 76 Cal.App. 114, 118, 243 P. 898, 900 (1925).

In the same case the court considered the words "notice" and "otherwise" as used in the clauses of the act:

" * * * The word 'notice' as used in both clauses * * * doubtless was intended to include such notices as are sent through the mail; also circulars left upon doorsteps, etc.

"We think that the term 'or otherwise' in the provision 'Every person who willfully * * * offers his services by any notice, advertisement, *or otherwise,* * * *,' should be construed as signifying other like means, i. e., means which are of the same general nature or class as advertisements, or which are of the same general nature or class as those notices which are akin to advertisements.

"This construction is warranted by the rule 'ejusdem generis,' * * *."
76 Cal.App. at 118, 119, 243 P. at 900.

In the McKean case, which involved a charged violation of the clauses relating to abortions, it was held that the information charging the defendant with orally offering to assist in an abortion did not state a public offense. The statute was construed to require more than the "advertisement" or "notice" that might be involved in the oral act of making the offer of services.

With these definitions in mind, it is next necessary to consider the plaintiff's contentions that its activities (and those of many others including doctors, newspapers and magazines) are "in direct contravention of A.R.S. § 13–213."

 Articles and press releases in newspapers and periodicals, including editorials, commentaries and informational articles on matters of current public interest are not "advertising" as defined above and therefore are not within the proscription of the statute. Next, we do not agree with plaintiff that the Arizona statute prohibits the dissemination of birth control information by a doctor to his patient, or by the Planned Parenthood Committee to those who seek such information from them, since person to person consultation is not "advertising", People v. McKean, supra.

 The exhibits in this case include a number of leaflets and pamphlets that Planned Parenthood has distributed, sometimes by the use of display racks in hospitals or clinics. Some of these give information in a general way about the purposes of the Planned Parenthood organization. Others describe the dangers of overpopulation, uncontrolled procreation, and abortion. Such literature is obviously not advertising of any medicine or means to prevent conception, or the offer of assistance in accomplishing such purpose, and therefore is not prohibited by the statute. Some of the literature deals principally with sex relations in marriage and touches on contraception only in a general way, stating that it is desirable, that safe methods

are available, and that the Planned Parenthood organizations will assist in selecting a doctor who would give the reader advice on the subject. One is a reprint of a popular women's magazine story in which two methods of contraception are discussed in rather specific detail, but without reference to brand names of contraceptive devices or preparations. We think none of the materials thus far discussed fall within the category of "advertising" and therefore that the statute does not prohibit the distribution of such items.

Some of the literature consists of instructions on the application and use of particular contraceptive devices and preparations which are identified by brand name. If such literature is placed on public display or generally distributed to the public, we think this would amount to advertising and fall within the prohibitive terms of the statute.

■ The stipulation of facts indicates that much of Planned Parenthood's business activity comes through the means of referrals by doctors and nurses working in various medical clinics throughout the county. Such referrals are not "advertising" or "notices" when they are made with respect to persons who have, of their own accord, sought birth control information from the referring party. Nor are referrals advertising when they are made by the referring party in the course of his professional treatment of his patient. Cf. People v. McKean, 76 Cal.App. 114, 243 P. 898 (1925). If, however, the plaintiff were to aggressively solicit "referrals" by the employment of touters or canvassers, we think such activity would fall within the clause of the statute as construed by the McKean case, supra, which prohibits the offering of services to assist in the prevention of conception by means akin to advertising or the use of public notices.

Having construed the statute and considered the limitations which it imposes on plaintiff's activities, we turn to an examination of plaintiff's arguments that the statute is unconstitutional.

■ Plaintiff contends that the statute deprives it of its right to free speech and freedom of the press guaranteed by the First and Fourteenth Amendments of the Federal Constitution, and by Article II, §§ 4 and 6 of the Arizona Constitution, because it imposes a "prior restraint" on protected speech and publishing activities. In support of this argument plaintiff cites Near v. State of Minnesota ex rel. Olson, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931) (injunction against publication of allegedly defamatory paper held invalid); Schneider v. State of New Jersey, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939) (ordinance requiring discretionary permit for canvassing held invalid); Cantwell v. State of Connecticut, 310 U.S. 296, 60 S.Ct. 900,

84 L.Ed. 1213 (1940) (ordinance requiring discretionary permit for religious or charitable solicitation held invalid); Grosjean v. American Press Co., 297 U.S. 233, 56 S.Ct. 444, 80 L.Ed. 660 (1936) (tax having tendency to limit circulation of newspaper held invalid); Hague v. CIO, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939) (invalidity of ordinance requiring discretionary permit for public meetings affirmed); Niemotko v. State of Maryland, 340 U.S. 268, 71 S.Ct. 325, 95 L.Ed. 267 (1951) (prosecution for holding meeting without discretionary permit held unconstitutional); Saia v. People of The State of New York, 334 U.S. 558, 68 S.Ct. 1148, 92 L.Ed. 1574 (1948) (ordinance requiring discretionary permit for use of sound truck held invalid); and Kunz v. People of State of New York, 340 U.S. 290, 71 S.Ct. 312, 95 L.Ed. 280 (1951) (prosecution for holding meeting without discretionary permit held unconstitutional). These cases are authority for the proposition that imposing a prior restraint,[3] at least in the form of a license requirement, or the vesting of a discretionary power of censorship or control upon the free expression of ideas is prohibited by the First, and, as to the states, by the Fourteenth Amendment of the Constitution. But see Times Film Corp. v. City of Chicago, 365 U.S. 43, 81 S.Ct. 391, 5 L.Ed.2d 403 (1961).

It is apparent from the foregoing construction of this statute that it does not prohibit the public discussion or advocacy of the general ideas which plaintiff seeks to promote. It imposes no restraint in the form of a licensing requirement or censorship prior to the expression of these ideas through any media, nor does it make the expression of these general ideas criminal. It does not limit in any manner the detailed private, person to person, discussion or recommendation of any of the devices or preparations with which plaintiff deals. The only limitation it imposes is

3. One analysis of the nature of prior restraints concludes that such restraints are more effective deterrents to free expression than are systems of subsequent punishment for the following reasons: (a) systems of prior restraint generally affect a broad scope of communication activity—the innocent and borderline as well as the offensive; (b) prior restraints delay the expression of ideas or exclude them entirely from the market place of ideas; (c) they shift the burden to the proponent of the idea to prove its acceptability (rather than requiring the government to prove its offensiveness) and thus tend to engender adverse rulings; (d) they involve administrative rather than judicial determinations of the merit of ideas; (e) prior restraints operate behind a screen of informality and concealment that curtails public appraisals; (f) they permit unintelligent, overzealous and absurd administration of censorship; (g) prior restraints promote timidity and conformity in expression of ideas, eliminating boldness in expressing unorthodox or unaccepted ideas; (h) prior restraits permit a more effective control of communications because the discretionary features of subsequent criminal prosecution are not present. See Emerson, The Doctrine of Prior Restraint, 20 Law & Contemporary Problems 648 (1955).

that plaintiff may not advertise, in the sense of publicly advocating, specific trade branded devices or preparations in the contraceptive field. The restriction is not in the form of a prior restraint, but rather of a post conduct punishment. For these reasons we think the "prior restraint" cases are distinguishable and do not control.

Moreover, there is authority for the proposition that advertising does not enjoy the same degree of protection under the First Amendment as do other noncommercial forms of idea expression. Valentine v. Chrestensen, 316 U.S. 52, 62 S.Ct. 920, 86 L.Ed. 1262 (1942); E. F. Drew & Co., Inc. v. Federal Trade Commission, 235 F.2d 735 (2d Cir. 1956); Pollak v. Public Utilities Commission, 89 U.S.App.D.C. 94, 191 F.2d 450 (1951). But see United Interchange, Inc. of Mass. v. Harding, 154 Me. 128, 145 A.2d 94 (1958) and Application of Schillaci, 196 Cal.App.2d 591, 16 Cal. Rptr. 757 (1961), cases in which state courts have given First and Fourteenth Amendment protection to advertising activities.

The second ground of attack urged by the plaintiff is that the statute is an unwarranted exercise of police power of the state, and is violative of the due process requirements of the Fourteenth Amendment. It is well established that not every type of utterance or communication is protected by the constitutional guarantees of freedom of speech and of the press, Schenck v. United States, 249 U.S. 47, 39 S.Ct. 247, 63 L.Ed. 470 (1919); Beauharnais v. Illinois, 343 U.S. 250, 72 S.Ct. 725, 96 L.Ed. 919 (1952). The Federal and local governments may punish speech activities involving substantive evils, Schenck v. United States, supra, (interference with wartime conscription program); Feiner v. People of the State of New York, 340 U.S. 315, 71 S.Ct. 303, 95 L.Ed. 295 (1951) (incitement to riot); Dennis v. United States, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1951) (advocacy of violent overthrow of the government). Moreover, under the police power, states and municipalities may regulate the manner or form of the expression of ideas, Kovacs v. Cooper, 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949) (upholding a prohibition of sound trucks emitting "loud and raucous" noises); Poulos v. New Hampshire, 345 U.S. 395, 73 S.Ct. 760, 97 L.Ed. 1105 (1953) (upholding a non-discretionary licensing requirement for meetings in a park).

In Saia v. People of State of New York, 334 U.S. 558, 68 S.Ct. 1148, 92 L.Ed. 1574 (1948) the Court said in dictum, "Noise can be regulated by regulating decibels. The hours and place of public discussion can be controlled." 334 U.S. at 562, 68 S.Ct. at 1150. In a decision sustaining the exercise of the police power to prohibit the dissemination of ideas by means of loud and raucous sound trucks in Kovacs v. Cooper,

supra, the Court noted, "The preferred position of freedom of speech in a society that cherishes liberty for all does not require legislators to be insensible to claims by citizens to comfort and convenience." 336 U.S. at 88, 69 S.Ct. at 454. In Poulos v. State of New Hampshire, supra, where the Court upheld the power of the state to regulate the hours and place of public meetings, it said:

"The principles of the First Amendment are not to be treated as a promise that everyone with opinions or beliefs to express may gather around him at any public place and at any time a group for discussion or instruction. It is a non sequitur to say that First Amendment rights may not be regulated because they hold a preferred position in the hierarchy of the constitutional guarantees of the incidents of freedom. This Court has never so held and indeed has definitely indicated the contrary. It has indicated approval of reasonable nondiscriminatory regulation by governmental authority that preserves peace, order and tranquility without deprivation of the First Amendment, guarantees of free speech, press and the exercise of religion." 345 U.S. at 405, 73 S.Ct. at 766.[4]

More recent cases dealing with First Amendment questions have indicated that governmental regulation in this area is to be tested by a balancing of the state's interest in the welfare and safety of its citizens against the individual's interest in free speech and the degree of impairment of this freedom caused by the governmental regulation.

"Where First Amendment rights are asserted * * * resolution of the issue always involves a balancing by the courts of the competing private and public interests at stake in the particular circumstances shown." Barenblatt v. United States, 360 U.S. 109, 126, 79 S.Ct. 1081, 1093, 3 L.Ed.2d 1115 (1959).

"When particular conduct is regulated in the interest of public order, and the regulation results in an indirect conditional, partial abridgment of speech, the duty of the courts is to determine which

4. Whether the statute is regulatory or prohibitory does not appear to be a significant feature.
 "We need not determine whether this ordinance so construed is regulatory or prohibitory. All regulatory enactments are prohibitory so far as their restrictions are concerned, and the prohibition of this ordinance as to a use of streets is merely regulatory. * * * The constitutionality of the challenged ordinance as violative of appellant's right of free speech does not depend upon so narrow an issue as to whether its provisions are cast in the words of prohibition or regulation. The question is whether or not there is a real abridgment of the rights of free speech." Kovacs v. Cooper, 336 U.S. 77, 85, 69 S.Ct. 448, 452, 93 L. Ed. 513 (1949).

**242**

of these two conflicting interests demands the greater protection under the particular circumstances presented." American Communications Ass'n., C. I. O. v. Douds, 339 U.S. 382, 399, 70 S.Ct. 674, 684, 94 L.Ed. 925 (1950). See also Dennis v. United States, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1951); Wilkinson v. United States, 365 U.S. 399, 81 S.Ct. 567, 5 L.Ed.2d 633 (1961); Konigsberg v. State Bar, 366 U.S. 36, 81 S.Ct. 997, 6 L.Ed.2d 105 (1961);[5] Communist Party of United States v. Subversive Activities Control Board, 367 U.S. 1, 81 S.Ct. 1357, 6 L.Ed.2d 625 (1961).[6]

 The question then is this—is there any reasonable public interest which when weighed against the impairment of speech rights involved, will justify the limited restriction of First Amendment freedoms imposed by this statute which prohibits the advertising of contraceptive devices? The statute was enacted in this state in 1901, and we are not referred to any legislative history which would indicate the specific purposes the legislature had in mind in its enactment. Plaintiff argues that the

statute cannot legitimately be directed toward discouraging illicit sexual experience among young people because the state does not criminally punish fornication and therefore has no policy of discouraging such relations. We answer that this statute itself is sufficient evidence of a policy behind it, and that this policy need not be evidenced in other statutes. If we can discover any purpose related to the public health, safety or welfare which could be reasonably served by the statute, we will not sit in judgment upon the wisdom of the legislature in choosing this method to accomplish that purpose. State v. Green, 60 Ariz. 63, 131 P.2d 411 (1942); State v. A. J. Bayless Markets, Inc., 86 Ariz. 193, 342 P.2d 1088 (1959). Cf. Beauharnais v. People, 343 U.S. 250, 72 S.Ct. 725, 96 L.Ed. 919 (1952). We will, rather, weigh the worth of the purpose against the degree of impairment in expression of ideas which the statute entails.

In our estimation the statute could reasonably protect both the morals and the health of the community inasmuch as stimulation of sales of contraceptives might lead

5. "On the other hand, general regulatory statutes, not intended to control the content of speech but incidentally limiting its unfettered exercise, have not been regarded as the type of law the First or Fourteenth Amendment forbade Congress or the States to pass, when they have been found justified by subordinating valid governmental interests, a prerequisite to constitutionality which has necessarily involved a weighing of the governmental interest involved." 366 U.S. 36 at 50–51, 81 S.Ct. at 1007 (1961).

6. "Against the impediments which particular governmental regulation causes to entire freedom of individual action, there must be weighed the value to the public of the ends which the regulation may achieve." 367 U.S. 1 at 91, 81 S.Ct. at 1407.

**243**

to greater sexual activity among unmarried persons. Whether the statute was directed toward discouraging illicit sex experience among young people, for moral reasons, or because of the venereal disease problem, we consider the public interest served by the statute substantial compared with the private interest in free speech through advertising which is restricted by the statute.

The limited area of speech activity, advertising, which is here regulated is one which is subject to regulation in many contexts by both the State and Federal Governments. The manner in which many commodities are advertised is closely supervised by the Federal Trade Commission.[7] Advertisements for the sale of securities are highly regulated.[8] The advertising of goods at less than cost is prohibited in some jurisdictions.[9] Any advertising at all by certain groups such as lawyers or doctors is often prohibited with governmental sanction.[10] These examples illustrate the deep-rooted governmental interest in the area of thought expression here involved.

For the reasons discussed above we have concluded that A.R.S. § 13–213 is not an unconstitutional infringement of First Amendment rights, nor does it violate the

due process requirements of the Fourteenth Amendment.

The judgment of the trial court is affirmed.

UDALL, V. C. J., and STRUCKMEYER, JENNINGS and LOCKWOOD, JJ., concur.

---

7. 15 U.S.C. §§ 52 and 55 and regulations thereunder.
8. E. g. 17 C.F.R. §§ 230.134 and 230.223.
9. E. g. A.R.S. §§ 44–1461 to 44–1466, State v. Walgreen Drug Co., 57 Ariz. 308, 113 P.2d 650 (1941).

10. E. g. 17 A.R.S. Rules of Supreme Court of Arizona, Rule 29(a); Davis v. State, 183 Md. 385, 37 A.2d 880 (1944); Semler v. Oregon State Board of Dental Examiners. 294 U.S. 608, 55 S.Ct. 570, 79 L.Ed. 1086 (1935).