[No. 6805–2–II.   Division Two.   July 22, 1985.]

VERNON M. MORRIS, ET AL, *Appellants*, v. INTERNATIONAL
YOGURT COMPANY, ET AL, *Respondents*.

*James A. Krueger* and *James R. Verellen,* for appellants.

*William J. Rush,* for respondents.

ALEXANDER, J.—On June 21, 1977, International Yogurt Company (IYC) entered into a franchise agreement with Vernon and Marilyn Morris, granting them the right to operate a restaurant under the company's trade name. The agreement also provided for initial training and continuing guidance, a comprehensive advertising program, and the right to use IYC's yogurt mix. The mix had been developed by Darigold, according to IYC specifications, but Darigold was also selling it to other customers. The franchise offering circular described the mix as a "unique and special formula" and said it was considered a trade secret. Neither it nor the agreement stated that the mix was also available to nonfranchisees.

The Morrises held the franchise for approximately 3 years. However, the business never became financially successful, and they sold it in June 1980, for a loss.[1] Thereafter, they brought this action alleging violations of the Franchise Investment Protection Act (FIPA) and the Consumer Protection Act, securities fraud, common law fraud and negligent misrepresentation. The trial judge concluded there were no misrepresentations, fraud, or other statutory violations. He dismissed the action and awarded the defendants $5,000 in attorney's fees and $1,221.13 in costs. The Morrises contend he erred in finding that IYC was exempt from registration and that neither it nor its princi-

---

[1] It appears from the record that the Morrises spent approximately $62,724, including the franchise fee, in acquiring the business. They sold it for $37,500.

pals had made any misrepresentations concerning the yogurt mix. They also challenge the award of attorney's fees and the admission of certain exhibits not provided for in the pretrial order. The defendants cross–appeal, contending they should have been granted a larger attorney's fee. We affirm.

■■ The Morrises argue first that because IYC's yogurt mix was available to nonfranchisees, it was not unique and had, therefore, been misrepresented. However, a product may be unique and still widely available. All that is required is that it be different from other products, the sole one of its kind. *See Webster's Third New International Dictionary* (1969). The evidence showed that Darigold and the Hanna brothers (IYC's founders) had spent many months developing the mix, that the proportions of ingredients differed from other mixes, and that IYC's yogurt had a distinctive taste. This evidence was buttressed by the fact that both Darigold and IYC took special precautions to limit access to the formula. The trial judge found that IYC's yogurt mix was a "unique product." There being substantial evidence in the record to support this finding, it will not be disturbed. *Golberg v. Sanglier,* 96 Wn.2d 874, 639 P.2d 1347, 647 P.2d 489 (1982).

■ The Morrises next contend that under the Franchise Investment Protection Act,[2] IYC was required to tell them the mix was available to nonfranchisees because this information would have affected their decision to purchase the franchise. We disagree. A vendor is required to disclose only those facts which it could assume reasonably are material to the transaction and unknown to the other

---

[2]RCW 19.100.170 states in pertinent part:

"It is unlawful for any person in connection with the offer, sale, or purchase of any franchise directly or indirectly:

". . .

"(2) To sell or offer to sell a franchise in this state by means of any written or oral communication which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made in light of the circumstances under which they were made not misleading."

party. Restatement (Second) of Contracts § 161, comments *a, b* (1979); *Sorrell v. Young,* 6 Wn. App. 220, 491 P.2d 1312 (1971). Neither the offering circular nor the franchise agreement itself gave the Morrises any reason to believe exclusivity had been promised. The Hannas were considering various ways of marketing their yogurt, some of which might have been in competition with others. There was not even a guaranty that the Morrises would have the only yogurt stand within a given area. Furthermore, the formula was not, as the Morrises appear to suggest, the only consideration received for the franchise fee. In fact, the lawsuit was based partly upon allegations that IYC had failed to provide the help and training it had promised. There was no reasonable basis for the Morrises' presumption, and IYC cannot be held responsible for a mistake it neither caused nor had reason to suspect.

Moreover, even if IYC had violated the act, it could be held responsible only for those damages resulting from its illegal acts. RCW 19.100.190(2).[3] *See also Consolidated Dairy Prods. Co. v. Bar–T Ranch Dairy, Inc.,* 97 Wn.2d 167, 642 P.2d 1240 (1982); *Gunnar v. Brice,* 17 Wn. App. 819, 565 P.2d 1212 (1977). The Morrises presented no evidence whatsoever that their losses resulted from the lack of exclusive access to the mix. The burden of proof was theirs, and they have not met it.[4]

■ We are also unconvinced that IYC violated FIPA registration requirements.[5] The company claimed an

---

[3]RCW 19.100.190(2) provides, in part:

"Any person who sells or offers to sell a franchise in violation of this chapter shall be liable to the franchisee or subfranchisor who may sue at law or in equity for damages *caused thereby* for rescission or other relief as the court may deem appropriate." (Italics ours.)

[4]Had the Morrises been able to prove IYC had violated the Franchise Investment Protection Act, they might have been able to obtain rescission of the agreement, even without proof of damages. However, since they had sold the business, this remedy was no longer available to them.

[5]The trial judge found that IYC was exempt from registration. Although the Morrises have challenged only one of two similar findings, the nature of their

exemption under RCW 19.100.030(4)(b)(ii), which is available to a franchisor who:

> (ii)(A) has and is offering for sale fewer than ten franchises within the state of Washington under franchise agreement; and
> (B) does not advertise, using radio, television, newspaper, magazine, billboard, or other advertising medium the principal office of which is located in the state of Washington or Oregon, concerning the sale of or offer to sell franchises; . . .

Sometime between April and July 1977, IYC arranged for an ad in the "Restaurants" section in the yellow pages of the Tacoma telephone directory. The ad said:

YOGURT STAND THE

FROZEN YOGURT

BUSINESS OPPORTUNITIES

5115–101 Street S.W.—584-3535

However, the directory was not distributed until August. "Advertise" means to "tell about or praise . . . publicly." *See Webster's New World Dictionary* (3d ed. 1979). Under this definition, advertising requires dissemination.[6] Because the telephone book had not been distributed at the time of the sale, IYC had not advertised, and it qualified for the exemption.

The Morrises next contend that the trial judge should not have admitted exhibits that IYC omitted from

---

objection is clear, and we will overlook this defect. *See Heriot v. Smith,* 35 Wn. App. 496, 500, 668 P.2d 589 (1983).

[6]Case law almost invariably defines the term with reference to its capacity for providing information to the public. *See, e.g., Bissell Carpet Sweeper Co. v. Masters Mail Order Co. of Washington D.C., Inc.,* 140 F. Supp. 165, 173 (D. Md. 1956); *Planned Parenthood Comm. of Phoenix, Inc. v. Maricopa Cy.,* 92 Ariz. 231, 375 P.2d 719, 722 (1962); *Sassone v. Board of Chiropractic Examiners,* 201 Cal. App. 2d 165, 20 Cal. Rptr. 231, 235 (1962); *State v. Cusick,* 248 Iowa 1168, 84 N.W.2d 554, 556 (1957); *Deer Creek Constr. Co. v. Peterson,* 412 So. 2d 1169, 1173 (Miss. 1982); *People ex rel. Moffitt v. Wendelken,* 10 Misc. 2d 442, 156 N.Y.S.2d 129, 131 (1956).

its pretrial list.[7] We disagree. Slavish obedience to the pretrial order is not required. It may be modified or abandoned as the interests of justice require. The decision lies within the trial court's discretion. *Jordan v. Berkey,* 26 Wn. App. 242, 611 P.2d 1382 (1980). The Morrises have not shown that its decision was unreasonable. They knew about two of the exhibits at least 9 days before they were introduced, and the others contained similar information. Had they needed more time to prepare, they could have requested a continuance, but they did not do so. Neither did they attempt to explain how they would be prejudiced. They simply relied upon the existence of the pretrial order. That was not enough to justify rejection, and the exhibits were properly admitted.

■ Finally, we find nothing improper in the award of attorney's fees to the defendants in the amount of $5,000. An award of fees is permitted under FIPA (RCW 19.100-.190(3)), but the award of fees is discretionary.[8] On the other hand, the franchise agreement *required* that the losing party pay fees and costs incurred by the prevailing party.[9] Although the Morrises contend that their suit was not based on the franchise agreement, the misrepresentations they alleged were all related to rights provided under

---

[7]The Morrises object to 17 exhibits, but our consideration is directed only to the five which are relevant to issues raised on appeal.

[8]RCW 19.100.190(3) provides in pertinent part:
"(3) The suit authorized under subsection (2) of this section may be brought to recover the actual damages sustained by the plaintiff and the court may in its discretion increase the award of damages to an amount not to exceed three times the actual damages sustained. *Provided,* That the prevailing party may in the discretion of the court recover the costs of said action including a reasonable attorneys' fee."

[9]The franchise agreement also provided:
"*Attorney's Fees.* If either party institutes an action to enforce its rights under this agreement, the losing party shall pay to the prevailing party the attorneys' fees and costs incurred by the prevailing party in such action, including any appeal thereof."

the agreement. However, while the trial judge was required to award fees, he still had broad discretion in determining the amount of the award. *See Beeson v. ARCO,* 88 Wn.2d 499, 563 P.2d 822 (1977); *Daniels v. Ward,* 35 Wn. App. 697, 669 P.2d 495 (1983). His award was substantially less than requested, and perhaps a bit low in view of the length and complexity of the trial. However, we do not believe it was so unreasonable as to amount to an abuse of discretion.[10]

IYC has also requested fees for this appeal. They are allowed under RAP 18.1 and RCW 19.100.190(3). *See Huebner v. Sales Promotion, Inc.,* 38 Wn. App. 66, 684 P.2d 752 (1984). We award $8,456.

Affirmed.

REED, A.C.J., concurs.

PETRICH, J. (concurring)—I disagree with the majority's determination that failure to disclose the fact that the yogurt mix was readily available to nonfranchisees was not a violation of the Franchise Investment Protection Act (FIPA).

The act makes it unlawful for one to omit "to state a material fact necessary in order to make the statements made in light of the circumstances under which they were made not misleading." (RCW 19.100.170(2)); footnote 2. The majority points out that the franchisor was "required to disclose only those facts which it could assume reasonably are material to the transaction and unknown to the

---

[10]The respondents have argued that attorney's fees should have been awarded to defendants under Washington's so-called "long-arm statute." RCW 4.28.185. Fees are permitted under that statute if a defendant is served outside the state. The corporate defendant, IYC, was served in Washington and thus the statute would be inapplicable to that defendant. Some individual defendants were apparently served in Oregon and, therefore, fees could be awarded to them pursuant to the statute. However, the award of fees under that statute is also permissible rather than mandatory. Absent some special circumstances, we find no abuse of discretion in failing to award fees under the long-arm statute to defendants served in a neighboring state.

other party." With this I agree. It then argues that since exclusivity had not been promised there was obviously no misstatement of a material fact. This analysis does not address the misleading aspect of the conduct proscribed by the statute.

It may be true that the particular yogurt mix was unique as that term is defined by Webster. Nevertheless, the statement that there was available a unique product to a franchisee who paid a fee and agreed to the terms of a franchise agreement is at the least misleading without disclosing the fact that the same product which is the essence of the franchise is available to anyone for the asking.

In my view this information would be a critical factor in deciding whether or not to purchase the franchise. The fact that there was no guaranty that they would have the only yogurt stand franchise in a given area does not buttress the majority's position. In such an event, the Morrises would be on a more equal footing with another franchisee burdened with comparable fees and restrictions imposed by the franchise agreement.

Nevertheless I agree with the majority's holding that the Morrises failed to establish that the damages they suffered resulted from this undisclosed material fact as well as all other aspects of the opinion. Consequently, I concur with the affirmance of the judgment below and the award of attorney's fees on appeal.

Review granted by Supreme Court October 30, 1985.