[No. 684-1.   Division One—Panel 2.   December 27, 1971.]

WILLIE S. SORRELL *et al., Appellants,* v. H. E. YOUNG *et al., Respondents.*

*Jack Steinberg,* for appellants.

*Hansen & Blackburn* and *John R. Blackburn,* for respondents.

JAMES, J.—Does caveat emptor apply, or may a vendee rescind an "arm's length" real estate contract upon discovering the nondisclosed fact that the residential lot he purchased had been filled?

In May of 1968, plaintiffs (Sorrell) contracted to purchase a residential lot (lot 3) from defendants (Young). Upon discovering that the lot had been filled, Sorrell made no further installment payments, but brought this action to rescind the contract and recover $1,457.55 paid upon the purchase price of $3,500. Sorrell also seeks reimbursement of $77 paid for real estate taxes and $70 spent for advertising in an attempt to resell the lot.

By cross complaint, Young claims the right to terminate the contract for nonpayment and to forfeit the $1,457.55 which Sorrell paid.

Sorrell's evidence established that in 1960 Young bought a block of six lots from King County at a tax foreclosure sale. All were below the grade of the street upon which they fronted. It was apparent to Young that lots 1, 2, 3 and 4 had been partially filled before he purchased them. By early 1963, Young had accomplished filling and bulldozing all six lots so that they were at grade with the street with a gradual downslope to the back. At trial, Young would not estimate the depth of the fill.

Young did not offer to sell any of the lots until approximately 7 years after the placement of the fill, when he considered that "the lots were in good salable condition." Young testified that he put the lots on the market when the land

> didn't show any settling that [he] could see, no cracks in the foundation and anyway, the people that would go there, they could size the proposition upon themselves and then go to the building department and find out whether the building department considered the land was in shape to build on, if they wanted to build.

It is undisputed that Young did not tell Sorrell that the lot had been filled. The existence of the fill was not apparent. Sorrell made no inquiry concerning a fill and was unaware of its existence.

Sorrell's evidence further established that soil tests would be required to obtain a building permit. There was evidence that soil testing could cost up to $1,500. Sorrell's contractor testified that because of the fill, it would at minimum be necessary to install piling as a foundation for a house at a cost of between $1,400 and $1,500. He further testified that there was no assurance that a house could be built even if piling were installed. His uncertainty was circumstantially supported by evidence that no houses have been built on any of the six lots, although all had been sold prior to Sorrell's purchase, and by the testimony of the

purchaser of another lot who found the cost of soil testing to be prohibitive.

Young challenged the sufficiency of Sorrell's evidence to establish a right to rescind. The trial judge sustained the challenge but in doing so considered only whether Sorrell had met the burden of proving that the contract had been induced by Young's express fraudulent misrepresentations. Specifically, he found that Sorrell had not established one of the nine essential elements of a fraudulent misrepresentation, *i.e.*, the falsity of the representation.

> [The] plaintiffs contend that the defendants misrepresented the real property in that they contend Mr. Young, the defendant, told them orally that "we could build a house on the lot". The court does not find that such a representation was or was not made to the plaintiffs but no proof has been offered showing that a house could not be built on said property so the court finds the defendants have not misrepresented the property to the plaintiffs.

Finding 3. The formal finding is amplified in the judge's oral opinion, wherein he stated:

> I find that there is no evidence that a house could not be constructed on here. The evidence from Mr. Dong is that a house could be constructed if piles were used and the evidence submitted from the testimony of Mrs. Carter was that the house could be built provided Pacific Testing Company submitted a soil inspection report.

■ We are satisfied that the trial judge viewed the evidence too narrowly. A failure to speak when there is a duty to do so may also be fraudulent. The controlling principle is expressed in Restatement of Contracts § 472, comment *b* (1932):

> A party entering into a bargain is not bound to tell everything he knows to the other party, even if he is aware that the other is ignorant of the facts; and unilateral mistake, of itself, does not make a transaction voidable (see § 503). But if a fact known by one party and not the other is so vital that if the mistake were mutual the contract would be voidable, and the party knowing the fact also knows that the other does not know it, nondisclosure is not privileged and is fraudulent.

The precise question presented here—the right to rescind for nondisclosure of the fact that land was filled—has not confronted a Washington appellate court. Washington's early unqualified adherence to the doctrine of caveat emptor in real estate transactions was relatively short-lived. In *Washington Cent. Imp. Co. v. Newlands*, 11 Wash. 212, 214, 39 P. 366 (1895), a purchaser was denied rescission as a matter of law because he did not assert that he "was in such a position that he was unable to make an investigation concerning the truth or falsity of [the] alleged [false] representations." The court reflected 19th century respect for rugged individualism in stating:

> [I]t seems to us that parties must exercise ordinary business sense, and the faculties which are given to them for the purpose of transacting business; and that they cannot call upon the law to stand *in loco parentis* to them in the ordinary transactions of business and their ordinary dealings with their fellow men.

*Washington Cent. Imp. Co. v. Newlands, supra* at 214.

But by the turn of the century, Washington had recognized that "the tendency of the more recent cases has been to restrict rather than extend the doctine of *caveat emptor*." *Wooddy v. Benton Water Co.*, 54 Wash. 124, 127, 102 P. 1054 (1909). And, "[a]s would be expected when change in the law is taking place, there is no unanimity" in the decisions of other jurisdictions. Keeton, *Rights of Disappointed Purchasers*, 32 Tex. L. Rev. 1, 4 (1953). However, there is an "amorphous tendency" on the part of most courts to grant relief to a purchaser for nondisclosure of facts which would probably affect the purchaser's decision to purchase. W. Prosser, Torts § 101 (3d ed. 1964). And consistent with Restatement of Torts § 551, comment *b* (1938), relief by way of rescission is more readily granted than damages. W. Prosser, Torts § 105 (3d ed. 1964).

In the frequently cited case of *Clauser v. Taylor*, 44 Cal. App. 2d 453, 112 P.2d 661 (1941), the operative facts are indistinguishable from the facts in this case. The vendor knew that the lots had been filled but did not disclose his knowledge to the purchaser. The purchaser viewed the lots

but made no inquiry concerning a fill. The existence of the fill was not apparent from "casual observation" and "[d]ue to the fact that the lots had been filled, the cost of building on them was materially increased." *Clauser v. Taylor, supra* at 454. *Clauser* relies upon Restatement of Contracts § 472, comment *b* (1932) in affirming the trial court's judgment granting the purchaser's prayer for rescission. *Clauser* and other cases in accord involving filled land are cited in Annot., 80 A.L.R.2d 1453 (1961).

We are satisfied that the ruling in *Obde v. Schlemeyer,* 56 Wn.2d 449, 353 P.2d 672 (1960) has aligned Washington with those jurisdictions which require a seller to disclose the existence of a fill. In *Obde,* the vendor did not disclose the fact that the apartment house he sold was infested with termites. The court noted that (1) the infestation was a "manifestly . . . serious and dangerous condition," and (2) the condition was "not readily observable upon reasonable inspection." The court concluded that

> [u]nder the circumstances, we are satisfied that "justice, equity, and fair dealing," to use Professor Keeton's language, demanded that the Schlemeyers speak—that they inform prospective purchasers, such as the Obdes, of the condition, regardless of the latter's failure to ask any questions relative to the possibility of termites.

*Obde v. Schlemeyer, supra* at 453.

*Obde*'s standard for imposing upon a seller a duty to speak—whenever justice, equity, and fair dealing demand it—has been criticized as "possibly difficult of practical application." 36 Wash. L. Rev. 202 (1960). But the hazards inherent in definitional circumscription were pointed out in *American Sav. Bank & Trust Co. v. Bremerton Gas Co.,* 99 Wash. 18, 31, 168 P. 775 (1917):

> Fraud is a thing to be described, rather than defined. Deception may find expression in such a variety of ways that most courts have studiously avoided reducing its elements to accurate definition. Human foresight is not sufficiently acute to anticipate the secret and covert methods of the artful and designing or of those who endeavor to reap where they have not sown. Once let it be known what the courts consider fraudulent and those

engaged in its perpetration will busy themselves in inventing some means of evasion. The courts, therefore, should content themselves with determining from the facts of each case whether fraud does or does not exist. While fraud is not lightly to be inferred, it does not follow that the inference of fraud cannot be gathered from surrounding circumstances, provided they are of sufficient strength and cogency to overcome the presumption of honesty and fair dealing.

The Washington Supreme Court, however, confessing its early reluctance to define fraud, acknowledged the law's need for certainty and "recognized" nine "elements" essential to the proof of actionable fraudulent misrepresentation. *Webster v. L. Romano Eng'r Corp.*, 178 Wash. 118, 34 P.2d 428 (1934).

Fraudulent misrepresentation or nondisclosure has historically been treated as a tort in actions at law. But "[m]isrepresentation was recognized very early as a basis for the jurisdiction of courts of equity, . . ." W. Prosser, Torts § 100, at 701 (3d ed. 1964). The coexistence of both legal and equitable remedies has resulted in considerable conceptual confusion. By the law's standards, tortious conduct is that which is socially unreasonable. Equity is offended by unfair dealing. But the standard of conduct required of a real estate vendor by either law or equity is not more nebulous than the reasonable and prudent man standard of the law of negligence.

We conceive the essential "elements" in proof of constructive fraud by nondisclosure of the existence of a land fill to be: (1) a vendor, knowing that the land has been filled, fails to disclose that fact to a purchaser of the property, and (2) the purchaser is unaware of the existence of the fill because either he has had no opportunity to inspect the property, or the existence of the fill was not apparent or readily ascertainable, and (3) the value of the property is materially affected by the existence of the fill. When these three elements have been proved, a vendor's duty imposed by *Obde*'s general standard of justice, equity,

and fair dealing has been violated, and a purchaser of land is entitled to rescind.

Sorrell presented substantial evidence to establish each of the three elements of constructive fraud. Young's challenge should have been denied. The cause is remanded for the presentation of Young's defense.

FARRIS, A.C.J., and SWANSON, J., concur.