[No. 12287–8–I.   Division One.   April 24, 1985.]

JOHN R. MITCHELL, ET AL, *Appellants,* v. WILLIAM J. STRAITH, JR., ET AL, *Respondents.*

---

*William J. O'Brien III,* for appellants.

*Kristin Henderson* and *Edward T. Hilpert, Jr.,* for respondents.

SCHOLFIELD, A.C.J.—John R. Mitchell and Cynthia Sue VanSickle, husband and wife (hereinafter Mitchell), appeal the dismissal with prejudice of their complaint against William J. Straith, Jr., and his wife, Janice R. Straith (hereinafter Straith). Mitchell contends the trial court erred in finding Straith did not breach an express warranty and did not commit fraud or misrepresentation in selling a residential property to Mitchell. Mitchell also challenges the amount of attorney fees awarded to Straith. We affirm the dismissal of the complaint and remand for further proceedings on the issue of attorney fees.

On December 12, 1979, Mitchell entered into a Real

Estate Purchase and Sale Contract (hereinafter Contract) with Straith to purchase Straith's real property located in Bothell, Washington, for $75,000. Section 5 of the Contract provided:

> 5. UTILITIES. Seller warrants that the property is connected to a ☒ public water main; ☐ well; ☐ public sewer main; ☒ septic tank; ☐ none of the foregoing. (If well or septic tank are checked, the well or septic tank provisions on the reverse side hereof are part of this agreement.)

Section 10 of the Contract provided:

> 10. DEFAULT. In the event of default by Purchaser, Seller shall have the election to retain the earnest money as liquidated damages, or to institute suit to enforce any rights Seller has. In the event that either the Purchaser, Seller, or Agent, shall institute suit to enforce any rights hereunder, the successful party shall be entitled to court costs and a reasonable attorney's fees [*sic*].

The property is located in a group of 10 lots on the north side of the Sammamish River. Bordering the lots on the north side are a railroad right of way and, next to the right of way, N.E. Bothell Way. An 8–inch water main owned by King County Water District 79 runs along the north side of N.E. Bothell Way. The subject property and the other lots were connected to this water main by a 2–inch galvanized iron pipe running from a meter on the water main underneath N.E. Bothell Way and the railroad right of way to the lot on the east end of the group of lots. From this lot, one pipe ran east to a marina and a 1–inch or ¾–inch pipe ran west to the other lots. An easement for ingress and egress and for utilities ran along the northern edge of all of the lots.

The marina was billed for the water usage shown by the meter, and each of the owners served by the arrangement paid for a proportionate share of the water cost. Straith disclosed the nature of the water system and the billing system to Kevin Hanchett, the listing agent at the real estate brokerage of Theodore J. Kopp.

On the date he signed the Contract, Mitchell was shown the property by Theodore J. Kopp, who, with Mitchell, vis-

ited various King County administrative offices regarding the property. Inquiry was made at that time of Water District 79. In response to his inquiry, the water district advised Mitchell there were no assessments against the property. Kopp filled in the blanks in the Contract, including the boxes in section 5 regarding water service. Mitchell and Straith never met or talked to each other until after litigation commenced. Finding of fact 4. Straith had not occupied the property for approximately 1 year prior to its sale.

Mitchell moved onto the property on January 15, 1980, and the sale was closed on January 24, 1980. Approximately 1 month later, Mitchell learned that a utility local improvement district (ULID) had been formed to build a water main to service the area and that the estimated assessment for the Mitchell property was $6,000. Mitchell asked Straith to pay the assessment and, when Straith refused, filed this action. The property was ultimately assessed for $7,197.10 and Mitchell seeks recovery of that amount.

The trial court found that, although Straith was aware of neighborhood conversations that a ULID might be formed to improve water and sewer service, he never received notice of its proposed formation. The trial court also found that the property was benefited and its value increased, at least to the extent of the assessment amount, by the improvements consisting of a new water main, fire hydrants, individual water meters for each property, and an overall improved water system.

Expert testimony was offered by both sides on the meaning of the provision in paragraph 5 that "Seller warrants that the property is connected to a . . . public water main; . . ."

## BREACH OF WARRANTY

Mitchell first contends Straith breached his warranty that the property was connected to a public water main. Mitchell argues that the clear meaning of the warranty is

that the property is connected *directly* to the public water main.

██ The trial court concluded that property served by water from a public water main through pipes connecting the property to the public water main was, in fact, connected to a public water main. *Webster's Third New International Dictionary* 480 (3d ed. 1969) defines "connected" as "joined or linked together". To add the word "directly" to the language of the warranty, as urged by Mitchell, would amount to a revision significantly changing its meaning. This we are not permitted to do. *Farmers Ins. Co. v. Miller,* 87 Wn.2d 70, 73, 549 P.2d 9 (1976). The evidence supports the trial court's finding and the findings support the trial court's conclusion that Straith did not breach the warranty that the subject property was "connected to a . . . public water main".

### DUTY TO DISCLOSE

Mitchell contends the facts of this case imposed upon Straith a duty to disclose the unusual water piping arrangement to him and that his failure to do so amounts to a misrepresentation of material fact rendering Straith liable for the water assessment.

Mitchell relies upon *Sorrell v. Young,* 6 Wn. App. 220, 491 P.2d 1312 (1971). In *Sorrell,* a purchaser of a lot was entitled to rescind because the vendor failed to disclose that the lot had been built up to street level by a substantial fill. The presence of the fill required soil tests and a foundation built on piling, both of which were expensive and significantly increased the construction cost of a house if, indeed, a house could be built on the lot at all. The court found that this fact pattern placed a duty on the seller to disclose the fact of the fill to the purchaser, whether he asked about it or not. The court relied, in part, on the principle expressed in Restatement of Contracts § 472, comment *b* (1932):

> A party entering into a bargain is not bound to tell everything he knows to the other party, even if he is

aware that the other is ignorant of the facts; and unilateral mistake, of itself, does not make a transaction voidable (see § 503). But if a fact known by one party and not the other is so vital that if the mistake were mutual the contract would be voidable, and the party knowing the fact also knows that the other does not know it, nondisclosure is not privileged and is fraudulent.

*Sorrell,* at 222.

The elements necessary for imposition of a duty to speak in a "land fill" case are stated in *Sorrell,* at 225:

We conceive the essential "elements" in proof of constructive fraud by nondisclosure of the existence of a land fill to be: (1) a vendor, knowing that the land has been filled, fails to disclose that fact to a purchaser of the property, and (2) the purchaser is unaware of the existence of the fill because either he has had no opportunity to inspect the property, or the existence of the fill was not apparent or readily ascertainable, and (3) the value of the property is materially affected by the existence of the fill.

*Sorrell* is a case allowing rescission because the misrepresentation by silence materially affected the purpose of the transaction. The purchaser had acquired a building lot that could not be used for the purpose of constructing a house thereon without substantial unanticipated expense, if at all. *Sorrell* is consistent with the requirement that rescission requires a material breach of contract often defined as one that substantially defeats the purpose of the contract. 17 Am. Jur. 2d *Contracts* § 504, at 981 (1964).

In this case, Mitchell seeks only damages. Proof of a material misrepresentation should be sufficient to allow recovery of damages, whether or not it would be sufficient to support rescission. Restatement (Second) of Contracts § 164 (1981).

Restatement (Second) of Contracts § 161 (1981) provides, in part:

A person's non–disclosure of a fact known to him is equivalent to an assertion that the fact does not exist in the following cases only:

(a) . . .

(b) where he knows that disclosure of the fact would correct a mistake of the other party as to a basic assumption on which that party is making the contract and if non–disclosure of the fact amounts to a failure to act in good faith and in accordance with reasonable standards of fair dealing.

In *Obde v. Schlemeyer,* 56 Wn.2d 449, 353 P.2d 672 (1960), the Washington court refused to apply the common law doctrine of caveat emptor and imposed a duty to speak under certain limited conditions. In *Obde,* the vendor sold a residence infested with termites. The vendor knew about the termites, but the purchaser did not. There was evidence the termites could, in time, eat away the supporting structures of a wood building to the point of causing it to collapse. There were no outward or surface indications of the presence of termites, so the condition was not discoverable upon a reasonable inspection.

The vendee was awarded substantial damages. The court held that, even though not questioned about termites, the vendor had a duty to disclose the condition to the vendee, and that failure to do so was fraud. Relying on the earlier case of *Perkins v. Marsh,* 179 Wash. 362, 37 P.2d 689 (1934), the *Obde* court said at page 452:

"Where there are concealed defects in demised premises, dangerous to the property, health or life of the tenant, which defects are known to the landlord when the lease is made, but unknown to the tenant, and which a careful examination on his part would not disclose, it is the landlord's duty to disclose them to the tenant before leasing, and his failure to do so amounts to a fraud."

We deem this rule to be equally applicable to the vendor–purchaser relationship.

Both *Sorrell* and *Obde* imposed a duty to speak in cases where the undisclosed fact was a material fact to the extent that it substantially affected adversely the value of the property or operated to materially impair or defeat the purpose of the transaction. Both cases also relied upon a finding that the purchaser had no knowledge of the

alleged defect and that it was a defect a reasonable inspection would not disclose.

Similar findings necessary for imposing a duty to speak are not present in this case. There was no evidence the value of the property was adversely affected by the water system. The absence of a finding on a material issue is presumptively a negative finding entered against the party with the burden of proof. *Golberg v. Sanglier,* 96 Wn.2d 874, 880, 639 P.2d 1347, 647 P.2d 489 (1982); *In re Eggers,* 30 Wn. App. 867, 873, 638 P.2d 1267 (1982). Because the burden of proof was on Mitchell, he thus failed to establish these necessary elements.

The water system, while unusual, did not render the property uninhabitable, did not significantly impair its usefulness and was remediable through construction of a new water main by the ULID. This change to a wholly public system resulted in an assessment against the property based on the cost of the improvement and payable in installments over a term of 10 years. The trial court found the benefits to the property from the ULID equaled the amount of the assessment and increased the value of the property by at least that much. Finding of fact 12.

The defect complained of here does not meet the implicit requirements of *Sorrell* and *Obde* of an undisclosed defect substantially affecting the value and usefulness of the property.

There is no evidence that Straith had any knowledge of how much Mitchell knew or did not know about the water system. When Mitchell asked Kopp about a water meter serving the property, Kopp stated he had no knowledge of that and referred Mitchell to King County Water District 79. The record reflects no knowledge by Kopp or Straith as to what inquiries Mitchell may have made thereafter or what he learned. There is no basis, therefore, on which knowledge can be attributed to Straith that Mitchell was proceeding upon or was influenced by any false knowledge with respect to the water system.

The trial court found that Straith did not make

any misrepresentation, either negligently or intentionally. These findings are supported by substantial evidence and are, therefore, binding on this court. *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959).

### ATTORNEY FEES

At the time the trial court fixed attorney fees to be paid by Mitchell to Straith pursuant to a provision in the Contract, Mitchell directed the attention of the trial judge, both in writing and orally, to the fact that this case was originally assigned for arbitration under the Superior Court Mandatory Arbitration Rules. Mitchell's complaint sought no relief other than a money judgment of less than $10,000, exclusive of attorney fees, interest and costs. The case was properly assigned for arbitration pursuant to MAR 1.2. Straith filed an amended answer, in which he stated a counterclaim for rescission. Straith's counsel then notified the director of arbitration that with the rescission claim pending, the case no longer qualified for arbitration pursuant to MAR 1.2. The case was thereafter withdrawn from arbitration and was placed on the regular trial calendar. There is no indication in the record before this court that the counterclaim for rescission was ever seriously pursued by Straith. Straith does not assert in his brief, nor was there asserted in oral argument before this court, any breach by Mitchell that could have supported rescission of the sale of his property to Mitchell. Mitchell contends on appeal, as he did in the trial court, that the counterclaim for rescission was not asserted in good faith by Straith, but was asserted for the sole purpose of frustrating Mitchell's desire to have the case heard through the mandatory arbitration program.

The trial court entered no finding or conclusion relating to this issue and proceeded to award to Straith attorney fees of $9,300, which included $500 for attorney fees incurred by Straith in resisting Mitchell's motion for reconsideration in the trial court.

The purpose of the mandatory arbitration program is to

dispose of cases by arbitration where the sole relief sought is a money judgment and no party asserts a claim in excess of $10,000[1] exclusive of attorney fees, interest and costs. Mandatory arbitration has proven itself to be a program that disposes of cases rapidly and usually at a substantially lower cost to the litigants than when the cases are disposed of through trial on the regular trial calendar. The contention of Mitchell that the counterclaim for rescission was not a good faith pleading and, therefore, should be taken into consideration in the fixing of attorney fees to be awarded Straith in this case raises a legal issue which must be resolved by the trial court. The record before us does not indicate consideration or disposition of this issue.

The award of attorney fees to Straith is hereby set aside, and this case is remanded to the trial court for the purpose of conducting a hearing and then fixing reasonable attorney fees to be awarded Straith in the trial court and in the Court of Appeals. The judgment of the trial court is otherwise affirmed.

SWANSON and RINGOLD, JJ., concur.

Reconsideration denied May 24, 1985.

---

[1]This was the applicable amount at the time as provided by MAR 1.2.