[No. 20266-9-I.  Division One.  April 25, 1988.]

PUGET SOUND SERVICE CORPORATION, *Appellant,* v. DALARNA MANAGEMENT CORPORATION, ET AL, *Respondents.*

*William W. Baker* and *Anderson, Hunter, Dewell, Baker & Collins, P.S.*, for appellant.

*Robert L. Christie, Waitt, Johnson & Martens, Stevan D. Phillips*, and *Jones, Grey & Bayley*, for respondents.

PEKELIS, J.—Puget Sound Service Corporation appeals from the trial court's order granting summary judgment for Dalarna Management Corporation and dismissing Puget Sound's action for fraudulent concealment.

I

The Union Harbor Apartments were built in 1970 on a pier over Lake Union. In 1974, the building was acquired by defendants/respondents Dalarna Management Corporation, Kearns Holdings, Ltd., and Pitard Holdings, Ltd. (Dalarna). Dalarna maintained the building through its agent, the Canamara Corporation, until 1980.

During this period, Canamara employed Robert Hoover, first as resident manager of the Union Harbor Apartments and later as property manager overseeing various buildings, including the Union Harbor building. According to Hoover's deposition testimony, the Union Harbor building had problems with water leaks throughout the period of Dalarna's ownership. Hoover testified that there were leaks virtually every time it rained, and that at one time or another every unit in the building was affected. Furthermore, the leakage was obvious and was so well known by

the residents of the building that it was, in Hoover's words, "more or less a common joke."

Hoover further testified that during a 6–year period, various repairs were made in an attempt to stop the leaks. The roof was repaired, the windows were caulked, weather stripping was replaced, deflectors were put on the weep holes, and for a time the windows on one side of the building were completely sealed so that they could not be opened. Mr. Ullrich, Dalarna's property manager, was periodically apprised of the problem, as well as the various measures taken to correct it. Some of these measures ameliorated the problem somewhat, but none of them solved it. According to Hoover, neither he nor anyone else was ever able to determine the source of the problem.

In June 1980, the building was sold to Thomas Curran, who assigned it to plaintiff/appellant Puget Sound Service Corporation (Puget Sound). The original earnest money agreement, signed on February 14, 1980, provided that completion of the sale was conditioned upon the buyer's inspection of the building plans, the apartment records, and the building itself. Curran personally inspected the building several times, and he spoke with the building manager, Steve Frazier. In his deposition, Curran could not recall having asked Frazier about any defects or maintenance problems, nor could he recall Frazier having told him of any problems.

Curran also had the building inspected on two occasions by William Tsao, a licensed professional engineer. In a report submitted after his second inspection, Tsao noted that he had observed evidence of water penetration, including stains, cracked plaster, and loose tiles. The report states:

> These leaks are not serious but should be controlled by additional caulking outside and repainting and/or replastering inside. . . .

In his deposition testimony, Tsao stated that the evidence in question was readily observable. However, Tsao did not

form an opinion as to the cause of the problem, since to do so would have been beyond the scope of his investigation.

Puget Sound took ownership of the building and converted the apartments into condominiums. The water leaks continued. In March 1982, Nik Halladay, the president of Puget Sound, contacted Robert Hoover and asked for his advice. Hoover walked through the building with Halladay and explained the problems he had experienced during Dalarna's ownership of the building. Puget Sound made various repairs, but the problem persisted. By January 1986, according to Halladay, Puget Sound had spent approximately $118,000 in its attempts to stop the leaks.

In March 1983, Puget Sound brought suit against Dalarna, alleging that Dalarna had failed to disclose "substantial, chronic, and unresolved water leakage problems" of which it had been aware when it sold the building. In September 1984, Puget Sound also brought a third party complaint against Dalarna in a suit brought by the condominium owners' association against Puget Sound. The two actions were consolidated below.

Dalarna's motion for summary judgment was heard on March 23, 1987, and the court's order granting summary judgment was entered the same day. Puget Sound moved for reconsideration on March 27 and submitted two new affidavits with its motion. Dalarna argued that the affidavits were untimely, and urged the court not to consider them. The court declined to consider the two affidavits and denied Puget Sound's motion for reconsideration. Puget Sound brings this timely appeal from the court's orders.

## II

On appeal from an order of summary judgment, the reviewing court engages in the same inquiry as the trial court. *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). A motion for summary judgment should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, demonstrate that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c). The court must consider all facts submitted and all reasonable inferences therefrom in the light most favorable to the nonmoving party, and the motion should be granted only if, from all the evidence, reasonable persons could reach but one conclusion. *Wilson,* 98 Wn.2d at 437.

## III

Puget Sound contends that Dalarna's failure to disclose the extent of the leakage problem constitutes a constructive fraud by nondisclosure. Dalarna, on the other hand, argues that it had had no duty of disclosure because it allowed Puget Sound to inspect the building and because the leakage problem was apparent.

Although there is no general requirement of full disclosure of all relevant facts in every business relationship, a duty to disclose can arise out of the general contractual obligation to deal in good faith. *Liebergesell v. Evans,* 93 Wn.2d 881, 893, 613 P.2d 1170 (1980). In *Sorrell v. Young,* 6 Wn. App. 220, 225, 491 P.2d 1312 (1971), this court set out a 3–part test for constructive fraud by nondisclosure in a case involving a landfill:[1]

> (1) a vendor, knowing that the land has been filled, fails to disclose that fact to a purchaser of the property, and (2) the purchaser is unaware of the existence of the fill because either he has had no opportunity to inspect the property, or the existence of the fill was not apparent or readily ascertainable, and (3) the value of the property is materially affected by the existence of the fill. . . .

The dispositive issue presented here is whether Puget Sound is able to make a prima facie case under the second

---

[1] The same test has since been applied to other types of latent defects. *See Mitchell v. Straith,* 40 Wn. App. 405, 409–13, 698 P.2d 609 (1985) (water pipes); *Gunnar v. Brice,* 17 Wn. App. 819, 822–23, 565 P.2d 1212 (1977) (construction defects); *see also Obde v. Schlemeyer,* 56 Wn.2d 449, 452–53, 353 P.2d 672 (1960) (termite infestation); *Luxon v. Caviezel,* 42 Wn. App. 261, 264–65, 710 P.2d 809 (1985) (septic system); *Goldfarb v. Dietz,* 8 Wn. App. 464, 470–71, 506 P.2d 1322 (1973) (zoning requirements).

prong of the *Sorrell* test. Since it is undisputed that Puget Sound had ample opportunity to inspect the building, it must be shown that the defect complained of was neither apparent nor readily ascertainable. Whether Puget Sound can show this depends on how the "defect" is to be defined. It is undisputed that evidence of some water leakage was apparent. Therefore, if the defect is, as Dalarna contends, "water leakage," then if follows that the defect was apparent.

However, Puget Sound contends that the "true defect" at issue is not merely "water leakage," but "extreme, chronic water leakage." While it concedes that some water leakage was apparent, it argues that the *extent* of the leakage was so extreme as to constitute a defect qualitatively different from mere "water leakage." This defect, Puget Sound argues, was neither apparent nor readily ascertainable. In essence, what Dalarna failed to disclose, according to Puget Sound's theory, was its "historical experience" with the leakage problem.

The cases on constructive fraud by nondisclosure do not directly address this issue. However, in cases where a constructive fraud has been found, there was no surface evidence of the defect. *See Obde v. Schlemeyer,* 56 Wn.2d 449, 453, 353 P.2d 672 (1960); *Luxon v. Caviezel,* 42 Wn. App. 261, 265, 710 P.2d 809 (1985); *Sorrell,* 6 Wn. App. at 221. In such cases, a constructive fraud can exist even though the buyer makes no inquiries which would lead him to ascertain the defect. *See Obde,* 56 Wn.2d at 451; *Sorrell,* 6 Wn. App. at 221.

Puget Sound's argument that the extent of the problem can constitute a separate defect has a certain appeal. However, under the facts presented, this theory would require an improper extension of the doctrine of constructive fraud. Thus far, constructive fraud has been limited to situations where no evidence of the defect is apparent. As it presently exists, the law in Washington balances the harshness of the former rule of caveat emptor with the equally undesirable

alternative of the courts standing in loco parentis to parties transacting business. *See Sorrell,* 6 Wn. App. at 223.

Even accepting the distinction Puget Sound would make between the "water leakage" which was apparent and the "extreme, chronic water leakage" which was not, the "true defect," as Puget Sound would have it, was closely related to the apparent surface problems. Since Puget Sound knew that there was *some* water leakage, it could readily have ascertained Dalarna's "historical experience" with the leakage by simply making inquiries. There is no evidence that such inquiries were made, or that they would have been fruitless.

We hold that where, as in this case, an actual inspection demonstrates some evidence of water penetration, the buyer must make inquiries of the seller. Through such questioning, the extent of the problem could have been readily ascertained. Under the circumstances of this case, the seller had no duty to affirmatively report its historical experience with water penetration problems.

## IV

Puget Sound also contends that the trial court erred in failing to consider the two affidavits submitted in support of its motion for reconsideration. However, the result we have reached would not be affected by the two affidavits.

One of these affidavits relates to the materiality of the defect, an issue we need not reach. The other affidavit was intended to show that Tsao's conclusion that the leakage problem was not serious was reasonable under the circumstances. In light of our holding that the defect, water leakage, was apparent and that this relieved Dalarna of any duty to volunteer further information on the history of the defect, Tsao's affidavit is immaterial. It only confirms the fact that he had knowledge of the existence of the defect, knowledge which he conveyed to Puget Sound. Since the result would not have been affected by these affidavits, we need not determine whether the court's failure to consider them was error.

Affirmed.

SWANSON and WEBSTER, JJ., concur.

Review denied by Supreme Court September 1, 1988.