IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| NOEL MOON, a single woman, | ) | No. 33614-0-III |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| DERALD HAUCK, a single man, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| WILLIAM BARR and DIANA BARR, | ) | |
| husband and wife and their marital | ) | |
| community; JEANINE BURNS and | ) | |
| JOHN DOE BURNS, wife and husband | ) | |
| and their marital community; and SOLEIL | ) | |
| REAL ESTATE OF SPOKANE, LLC., a | ) | |
| Washington limited liability corporation, | ) | |
| | ) | |
| Respondents. | ) | |

LAWRENCE-BERREY, A.C.J. — House purchaser Derald Hauck appeals the

summary judgment dismissal of his claims against house sellers William Barr and Diana

Barr, their real estate agent\daughter Jeanine Burns, and her employer Soleil Real Estate

of Spokane LLC (Soleil). The claims arose after Mr. Hauck's daughter, Noel Moon,

discovered old animal feces and urine under newly installed carpet.

Circumstantial evidence supports Mr. Hauck's claim that Mr. Barr knew of and fraudulently concealed the animal feces and urine. Circumstantial evidence also supports Mr. Hauck's claim that Ms. Burns knew of and failed to disclose the concealed problem. Further, a question of fact is presented as to whether Mr. Hauck, through his daughter, made sufficient inquiry about the animal smell before he purchased the house.

We conclude the trial court erred when it summarily dismissed Mr. Hauck's fraudulent concealment and Consumer Protection Act (CPA), chapter 19.86 RCW, claims against the defendants. But we conclude the trial court did not err when it summarily dismissed Mr. Hauck's breach of contract claim against the Barrs and his negligent misrepresentation claims against the defendants. We therefore reverse in part and affirm in part.

## FACTS

Because the trial court dismissed this case on summary judgment, we present the facts and all reasonable inferences in the light most favorable to Mr. Hauck, the nonmoving party.

In 1996, the Barrs bought the subject house. The Barrs rented the house to one set of tenants from 1996 to around 2010. Neighbors of the renters said the renters had pets, and for several years allowed their pets to urinate and defecate throughout the house. One of the neighbors said she would wear a different pair of shoes when she visited the renters so she would not track animal urine or feces back into her own house. She said her feet would actually sink in the floor due to the amount of urine and feces.

Mr. Barr visited the house once or twice a year when the renters needed repairs. He was concerned about the condition of the house, and asked the renters to clean the place up. He claims he never saw or smelled any animal feces or urine in the house.

After the renters moved out in 2010, Mr. Barr went into the house and determined it was a mess. There were holes in the wall, tears in the vinyl, and the carpets needed to be replaced. Mr. Barr did a lot of the work himself. He bought new carpet and hired carpet layers. He was in and out of the house after the layers removed the old carpet and padding and before they installed the new carpet.

Mr. Barr's daughter, Ms. Burns, was a real estate agent for Soleil. Mr. Barr asked her to sell the house. Ms. Burns did not help prepare the house for sale. When deposed, she said she went into the house only once while it was under repair. She noticed tarps on the floor. She was inside for about two minutes, handed her father his lunch, and left. The next time she saw the house it was "picture ready," and she took pictures of it to list. Clerk's Papers (CP) at 397. She claims she never noticed any animal smells in the house.

Ms. Burns listed the house in January 2012. The house was on the market for about 12 months. During this time, Ms. Burns held two open houses for brokers only. During one of the two open houses, one broker and one lender told her "they could smell animal." CP at 402. The house was shown about 20 times to potential purchasers.

Mr. Hauck became interested in buying the house for his daughter, Ms. Moon, who lived in Montana. Ms. Moon wanted to move to Spokane so her disabled daughter could be closer to health care facilities in Spokane. Ms. Moon, not her dad,

3

communicated with her dad's real estate agent and with Ms. Burns. This was because the

house was intended for her use, her dad's hearing was poor, and her dad had poor

telephone reception where he lived.

On October 9, 2012, Mr. Hauck entered into a purchase and sale agreement to

purchase the property. The purchase and sale agreement listed Ms. Burns as the listing

agent, and Soleil as the listing broker. The agreement also contained an inspection

addendum, which conditioned the agreement "on Buyer's subjective satisfaction with

inspections of the Property . . . ." CP at 240.

On October 18, 2012, Mr. Hauck had the property inspected. The property

inspection report noted "[a] **very strong pet urine smell . . . in the home.** This smell

may be difficult to remove." CP at 23. Another comment noted that cats had accessed

the crawl space under the home and used the dirt floor as a litter box. As the sellers'

agent, Ms. Burns never received a copy of the home inspection report.

A few days after the inspection, Ms. Moon discussed the entire inspection report

with the inspector for over an hour. Among other concerns, Ms. Moon was concerned

about the urine smell because she never smelled it. The inspector told her he had a

sensitive nose to dogs and cats. The inspector said the smell could be from cats using the

crawl space as a litter box. The inspector also said the smell could be on the painted

walls or trapped in the carpet itself from pets previously in the home.

Ms. Moon and the inspector discussed the costs to remove the smell if the smell

was in the carpet. The inspector suggested Ms. Moon find out the type and quality of

4

wood that was under the carpet so she could have an idea of what it would cost to refinish the floor if she decided to remove the carpet.

Ms. Moon telephoned Ms. Burns to discuss the inspection report. Ms. Moon discussed the urine smell the inspector noticed, and recapped the discussions she had with the inspector. Ms. Burns claimed she did not notice a urine smell and had not seen any pet stains. Ms. Moon said she was considering removing all of the carpet or repainting the walls. Ms. Moon asked during this call, and later in a different conversation, what kind of wood was under the carpet. In the later conversation, Ms. Burns said the Barrs did not remember.

Neither Mr. Hauck nor his daughter ever spoke with the Barrs prior to the sale of the house. Almost all discussions were between Ms. Moon and Ms. Burns. This was because Ms. Burns "made it clear that she was the only source of communication to her clients." CP at 427.

On November 5, 2012, Ms. Moon called Ms. Burns and explained she had switched lenders and needed a new purchase and sale agreement. On November 10, 2012, the parties entered into a second agreement. Mr. Hauck's agent asked Mr. Hauck to waive the inspection for purposes of the second agreement. Mr. Hauck signed the waiver, agreeing that

> Buyer has been advised to obtain a building . . . inspection, and to condition the closing of this Agreement on the results of such inspections, but Buyer elects to waive the right and buy the Property in its present condition. Buyer acknowledges that the decision to waive Buyer's inspection options

5

was based on Buyer's personal inspection and Buyer has not relied on representations by Seller, Listing Broker or Selling Broker.

CP at 75.

This second agreement included a seller disclosure statement. In that statement, the Barrs did not disclose the existence of animal feces and urine under the new carpet. They verified, other than those defects disclosed, there were no "other existing material defects affecting the property that a prospective buyer should know about." CP at 81. The disclosure statement further provided:

> A. Buyer has a duty to pay diligent attention to any material defects that are known to Buyer or can be known to Buyer by utilizing diligent attention and observation.
> B. The disclosures set forth in this statement and in any amendments to this statement are made only by the Seller and not by any real estate licensee or other party.
> C. Buyer acknowledges that, pursuant to RCW 64.06.050(2), real estate licensees are not liable for inaccurate information provided by Seller, except to the extent that the real estate licensees know of such inaccurate information.

CP at 81.

Ms. Moon visited the house at least two times before closing. Each time, she noticed air fresheners in the house. Mr. Hauck and the Barrs signed closing documents in mid-December 2012.

Before moving into the house, Ms. Moon told Ms. Burns she was going to rent a shampooer to clean the carpets. Ms. Burns said that would not be necessary because the carpets were brand new. Ms. Burns later told Ms. Moon she had been in the house prior to it being cleaned and described the house as "'trashed.'" CP at 426.

6

In January 2013, Ms. Moon and Mr. Hauck obtained the keys from Ms. Burns and went through the house with her. Ms. Moon noticed multiple air fresheners inside the home. She described them as "overpowering" and said they "burned [her] nasal passages." CP at 428. Ms. Burns even sprayed air freshener as they walked through the house. Ms. Burns told Ms. Moon she always sprayed houses that had been sitting closed. Before leaving that day, Ms. Moon turned on the heat.

Ms. Moon next went into the house in February 2013. The heating of the house caused the animal smell to be very noticeable. She determined the smell did not emanate from under the house. Ms. Moon then pulled up the new carpets and saw old animal feces and urine.

Mr. Hauck and Ms. Moon filed suit against the Barrs, Ms. Burns, and Soleil. They asserted fraudulent concealment, negligent misrepresentation, and CPA claims against all defendants. Mr. Hauck also asserted breach of the purchase and sale agreement against the Barrs.

After discovery, the defendants moved for summary judgment. The trial court granted the motion. As to Ms. Moon, the trial court determined she did not have legal or equitable standing because she was never a party to the purchase and sale agreement. As to Mr. Hauck, the trial court determined he failed to make a reasonable inquiry of the sellers concerning the animal smell made known to him by the inspection report.

Only Mr. Hauck appeals.

7

## ANALYSIS

This court reviews a summary judgment order de novo, engaging in the same inquiry as the trial court. *Kim v. Lakeside Adult Family Home*, 185 Wn.2d 532, 547, 374 P.3d 121 (2016). Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). A material fact is one the outcome of the litigation depends on. *In re Estate of Black*, 153 Wn.2d 152, 160, 102 P.3d 796 (2004). This court views all facts and reasonable inferences from those facts in the light most favorable to the nonmoving party. *Kim*, 185 Wn.2d at 547. Summary judgment is appropriate only if reasonable persons could reach but one conclusion from all the evidence. *Id.*

When reviewing a civil case in which the standard of proof is clear, cogent, and convincing evidence, this court "'must view the evidence presented through the prism of the substantive evidentiary burden.'" *Woody v. Stapp*, 146 Wn. App. 16, 22, 189 P.3d 807 (2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)); *see also Gossett v. Farmers Ins. Co. of Wash.*, 133 Wn.2d 954, 973, 948 P.2d 1264 (1997). The burden of proof for negligent misrepresentation and fraudulent concealment claims is clear, cogent, and convincing evidence. *Borish v. Russell*, 155 Wn. App. 892, 905 n.7, 230 P.3d 646 (2010); *Stieneke v. Russi*, 145 Wn. App. 544, 561, 190 P.3d 60 (2008). Thus, this court must determine whether, viewing

the evidence in the light most favorable to Mr. Hauck, a rational trier of fact could find that he supported his fraudulent concealment and negligent misrepresentation claims with clear, cogent, and convincing evidence. *See Woody*, 146 Wn. App. at 22.

A.    FRAUDULENT CONCEALMENT

Mr. Hauck argues the trial court erred in dismissing his fraudulent concealment claim. A buyer of residential property bringing a claim for fraudulent concealment must establish (1) the residential dwelling has a concealed defect; (2) the seller has knowledge of the defect; (3) the defect is dangerous to the purchaser's property, health, or life; (4) the defect is unknown to the purchaser; and (5) the defect would not be disclosed by a careful, reasonable inspection by the purchaser. *Alejandre v. Bull*, 159 Wn.2d 674, 689, 153 P.3d 864 (2007).

1.    *Concealed defect*

Here, Ms. Moon found pet feces and urine under the new carpet. The pet feces and urine were thus concealed.

2.    *Sellers' and Ms. Burns's knowledge*

Mr. Barr was inside the house during and after the time the old carpet and pad were removed and the new carpet was installed. Construing the facts and all reasonable inferences in the light most favorable to Mr. Hauck, a rational trier of fact could find by clear and convincing evidence that Mr. Barr knew that pet feces and urine were under the new carpet. Mr. Barr might have known this in one of at least three ways. First, he may have seen the carpet installers lay the carpet over the floor without the floors being first

9

adequately cleaned. Second, he may have seen the condition of the floors and known that the numerous years of pet urine and feces required the floorboards to be removed and replaced to adequately remedy the condition. Third, he may have smelled the odor after the new carpet was installed and have known the source of the smell was animal feces and urine still under the new carpet. Although Mr. Barr denies he ever smelled animal feces or urine, this is a fact peculiarly within his knowledge, and cross-examination should be allowed so a jury can determine the credibility of his denial. *See Arnold v. Saberhagen Holdings, Inc.*, 157 Wn. App. 649, 661-62, 240 P.3d 162 (2010); *Riley v. Andres*, 107 Wn. App. 391, 395, 27 P.3d 618 (2001).

Ms. Burns and Soleil argue they have no liability because Ms. Burns had no knowledge of the animal feces and urine under the carpet. We agree there is no direct evidence that Ms. Burns knew of the animal feces and urine. But we disagree that there is no circumstantial evidence. Circumstantial evidence may support a finding of direct knowledge. *Waite v. Whatcom County*, 54 Wn. App. 682, 687, 775 P.2d 967 (1989).

Construing the evidence and all reasonable inferences in the light most favorable to Mr. Hauck: (1) Ms. Burns described the house as "trashed," evidencing that she saw it early, before her father had new carpet installed; (2) the years of excessive animal feces and urine throughout the house would have produced a discernable smell, giving her knowledge that pets had defecated and urinated on the floors and the old carpet; and (3) as evidenced by her consistent and heavy use of air fresheners, she knew the floorboards were not sufficiently cleaned prior to installation of the new carpet.

10

Ms. Burns, similar to her father, denies ever smelling animal feces and urine. But a trier of fact is not required to believe Ms. Burns, who may have seen and smelled the house when it was in a trashed condition. Courts are reluctant to grant summary judgment when material facts are particularly within the knowledge of the moving party. *Arnold*, 157 Wn. App. at 661-62; *Riley*, 107 Wn. App. at 395. Here, there is circumstantial evidence Ms. Burns knew the floorboards were not adequately cleaned of animal feces and urine prior to being concealed by the new carpet. Although she disputes this knowledge, a trier of fact should have the opportunity to consider her denial under cross-examination to determine whether it believes her denial or the contradictory circumstantial evidence.

3.    *Dangerous to purchaser's health*

Mr. Hauck did not purchase the house for his own use—he purchased it for his daughter's use. Ms. Moon made clear to Ms. Burns that she was the intended occupant of the house. The defendants do not assert we should limit this element to Mr. Hauck's health. Because Ms. Burns knew Ms. Moon would be living in the house, we extend our inquiry to whether the defect is dangerous to *Ms. Moon's* health.

Mr. Hauck, through an industrial hygienist, presented evidence that would allow a rational trier of fact to find by clear and convincing evidence that the presence of old animal feces and urine likely cause conditions that would be dangerous to a person's health.

### 4. *Defect not known to purchaser*

The defect was not the smell. A smell is not dangerous to a person's health. The defect, instead, was the old feces and urine under the carpets. There is no evidence that Mr. Hauck or his daughter knew, before Mr. Hauck purchased the house, that there were old animal feces and urine under the new carpets.

### 5. *Defect not disclosed by careful, reasonable inspection*

Once a buyer discovers evidence of a defect, the buyer is on notice and has a duty to make further inquiries. *Douglas v. Visser*, 173 Wn. App. 823, 832, 295 P.3d 800 (2013). Here, the home inspector smelled animal feces and urine, and he disclosed this to Ms. Moon. Notice to Ms. Moon was notice to Mr. Hauck.

The evidence is undisputed that Ms. Moon was her father's agent for purposes of purchasing the house. She acted as his agent because the house was intended for her use, her father had difficulty hearing on the telephone, and her father's telephone reception was poor. The law required Mr. Hauck, directly or through his daughter, to make further inquiries about the animal smell.

The question presented here is whether Ms. Moon's discussion with Ms. Burns concerning the inspection report failed, as a matter of law, to fulfill this duty. Summary judgment is only proper if the question can be answered as a matter of law. To answer this question, we turn to cases that have discussed this duty to inquire.

In *Alejandre*, the home buyers had the septic system pumped before they purchased the house. *Alejandre*, 159 Wn.2d at 679. The septic company employee who

12

pumped the tank noted on the bill that he was unable to inspect the back baffle, and added there was "'[n]o obvious malfunction of the system at time of work done.'" *Id.* (alteration in original). After the purchase, the drainfield failed. *Id.* at 680. The failure was due to the back baffle missing, thus allowing sludge to enter the drainfield. *Id.* The buyers brought suit, alleging negligent misrepresentation and fraudulent concealment. *Id.* The trial court granted the seller's motion to dismiss at the end of the buyers' case. *Id.* The Supreme Court affirmed the dismissal of the buyers' fraudulent concealment claim. *Id.* at 691. The Supreme Court noted that trial testimony established an inspection of the back baffle would have been simple, and a careful examination would have led to discovery of the missing baffle. *Id.* at 690. *Alejandre* thus requires a house purchaser to make a reasonable inspection.

In *Dalarna*, an apartment building had chronic water leaks. *Puget Sound Serv. Corp. v. Dalarna Mgmt. Corp.*, 51 Wn. App. 209, 210, 752 P.2d 1353 (1988). Because of these leaks, the owner decided to sell the building. *Id.* at 211. The seller had several conversations with the buyer, but never discussed defects or maintenance problems. *Id.* The buyer had the building inspected. *Id.* The inspection revealed stains, cracked plaster, and loose tiles. *Id.* The report stated, "'These leaks are not serious but should be controlled by additional caulking outside and repainting and/or replastering inside.'" *Id.* The buyer purchased the building without making any further inquiries. *Id.* at 212.

After spending $118,000 attempting to fix the leaks, the buyer sued for constructive fraud, alleging that the seller failed to disclose "'substantial, chronic, and

13

unresolved water leakage problems.'" *Id.* The buyer agreed that it discovered evidence of water leaks, but argued the true defect was the extreme, chronic nature of the leaks. *Id.* at 214. The buyer characterized the extent of the problem as a separate defect. *Id.* The *Dalarna* court held that when "an actual inspection demonstrates some evidence of water penetration, the buyer must make inquiries of the seller." *Id.* at 215. The court reasoned that the buyer knew there was a defect, but did not inquire about the defect or establish that inquiries would have been fruitless. *Id.* The court further reasoned that the extent of the damage itself was not a separate defect, and it was no defense that the defect was worse than the buyer anticipated. *Id.* at 214-15. *Dalarna* thus requires a buyer with notice of a defect to make some inquiry of the seller concerning the defect.

In *Douglas*, the buyers learned through their home inspector of an area of wood rot and decay near the roof line. *Douglas*, 173 Wn. App. at 826. The home buyers failed to make any inquiries of the seller concerning possible wood rot. *Id.* After the purchase, the buyers learned that the wood rot was much more extensive. *Id.* at 827. The trial court heard the evidence and entered a verdict in favor of the buyers. *Id.* at 829. In reversing the trial court, we noted:

> The Douglases . . . were on notice of the defect and had a duty to make further inquiries. The Douglases argue that "they had no idea that 50 to 70% of the sill plate and rim joist were destroyed" and that the area of rot that [their inspector] discovered was not unusual. That, however, is the precise argument we rejected in *Dalarna*. Once [buyers] discover[ ] evidence of a defect, they are on notice and have a duty to make further inquiries. They cannot succeed when the extent of the defect is greater than anticipated, even when it is magnitudes greater.

14

*Id.* at 832. *Douglas* thus requires a buyer with notice of a defect to make some inquiry of the seller concerning the defect.

This case is dissimilar to *Dalarna* and *Douglas*. There, the buyers discovered evidence of defects and failed to make any inquiry. Here, Ms. Moon discussed with Ms. Burns the urine smell the inspector noticed and recapped the discussions she had with the inspector. Because Ms. Burns was the Barrs' agent, and did not permit Mr. Hauck or Ms. Moon to talk directly with them, inquiries made to her were inquiries made to the Barrs.

The defendants imply that Ms. Moon was required to pointedly ask Ms. Burns to disclose the location of the smell. But the defendants cite no case that requires such an inquiry. Rather, the law requires the buyer to make further inquiry concerning what he or she knows. Here, Ms. Moon learned that there was an animal smell emanating from somewhere. She discussed what she knew with Ms. Burns. By discussing what she knew with Ms. Burns, Ms. Burns was required to disclose her knowledge of the defect if she knew, or to discuss Ms. Moon's comments with Mr. Barr so he could disclose his knowledge of the defect. It is the seller's knowledge that a buyer is unaware of a concealed material defect that gives rise to the seller's duty to speak. *Alejandre*, 159 Wn.2d at 689.

This case is also dissimilar to *Alejandre*. There, the buyers did not conduct a careful, reasonable inspection. Here, Mr. Hauck hired a professional inspector. Even the professional inspector failed to find animal feces and urine under the carpet. Whether a careful, reasonable inspection requires a potential buyer to pull up newly installed carpet

15

to look for animal feces and urine is questionable, and surely cannot be answered as a matter of law *against* the buyer. Here, a rational trier of fact could find by clear and convincing evidence that Mr. Hauck, through Ms. Moon, conducted a careful and reasonable inspection.

B.     NEGLIGENT MISREPRESENTATION CLAIM AGAINST MS. BURNS AND SOLEIL

Mr. Hauck argues the trial court erred when it dismissed his negligent misrepresentation claim against Ms. Burns and Soleil.[1] More particularly, he argues Ms. Burns failed to uphold her statutory duties under RCW 18.86.030(1) and chapter 64.06 RCW.

RCW 18.86.030(1) defines duties owed by a real estate broker. A common law tort cause of action is the vehicle through which a real estate buyer may recover damages against an agent or a broker. *Jackowski v. Borchelt*, 174 Wn.2d 720, 735, 278 P.3d 1100 (2012). RCW 18.86.030(1) clarifies that the broker's duties are owed "to all parties to whom the broker renders real estate brokerage services." Here, neither Ms. Burns nor Soleil rendered real estate brokerage services to Mr. Hauck. Mr. Hauck hired his own real estate agent. Thus, RCW 18.86.030(1) does not support Mr. Hauck's cause of action against Ms. Burns or Soleil.

Chapter 64.06 RCW sets forth various required seller disclosures pertaining to different types of real estate sales. That chapter also provides buyers with limited rights

---

[1] Mr. Hauck impliedly concedes the trial court correctly applied the economic loss rule when it dismissed his negligent misrepresentation claim against the Barrs. His concession is correct. *See Alejandre*, 159 Wn.2d at 689.

16

and remedies. But because Mr. Hauck did not argue to the trial court that Ms. Burns and Soleil were liable to him under chapter 64.06 RCW, we do not consider his new argument on appeal. *See* RAP 2.5(a).

We conclude the trial court did not err when it dismissed Mr. Hauck's negligent misrepresentations claims against Ms. Burns and Soleil.

### C.    CPA CLAIMS

Mr. Hauck argues the trial court erred when it dismissed his CPA claim against the Barrs, Ms. Burns, and Soleil. "A violation of the [CPA] exists when there is (1) an unfair or deceptive act or practice (2) occurring in trade or commerce (3) with a public interest impact (4) that proximately causes (5) injury to a plaintiff in his or her business or property." *Douglas*, 173 Wn. App. at 834.

### 1.    *CPA liability against the Barrs*

The Barrs argue Mr. Hauck cannot establish there was an unfair or deceptive act or practice. We disagree. We must consider the evidence and all reasonable inferences most favorably to Mr. Hauck. Construing the evidence in this manner, Mr. Barr knew the floorboards were badly damaged by animal feces and urine and concealed the damage with new carpets.

The Barrs appear to argue, alternatively, that nothing they did *caused* Mr. Hauck's harm. They argue Mr. Hauck's failure to inquire and failure to do a careful, reasonable

17

inspection were the causes of Mr. Hauck's damages. But as we discussed previously, such arguments raise genuine issues of material fact best left to the trier of fact.[2]

2.     *CPA liability against Ms. Burns and Soleil*

a.     Unfair or deceptive act or practice

Ms. Burns and Soleil first argue they did not commit any unfair or deceptive act or practice because Ms. Burns had no independent knowledge of the animal feces and urine under the carpet. We have already addressed this argument and have determined that a trier of fact could find she gained such knowledge when she first visited the house and was later aware of the unabated smell. Again, a trier of fact should weigh her denial under cross-examination.

b.     Public interest

Ms. Burns and Soleil next argue the public interest element of Mr. Hauck's CPA claim is not met. We disagree.

In *Svendsen v. Stock*, 143 Wn.2d 546, 23 P.3d 455 (2001), a real estate agent assisting the seller of residential property had actual knowledge that the property flooded whenever a nearby storm drain became clogged with debris during heavy rains. *Id.* at 552. The real estate agent's knowledge arose independently of her assisting the seller completing the seller disclosure statement. *Id.* When the seller and agent discussed how

---

[2] The Barrs, both at summary judgment and on appeal, challenged Mr. Hauck's CPA claim only on the basis that he could not establish an unfair or deceptive act or practice. Although we reverse the dismissal of Mr. Hauck's CPA claim against the Barrs, the reversal is limited to the sole issue raised by the Barrs.

to complete the disclosure statement, the agent advised the seller not to disclose the problem because the cause—debris in the storm drain—had been (temporarily) fixed. *Id.* at 551. The agent added, there was no obligation to disclose a history of flooding because it "'is not happening right now.'" *Id.* The seller therefore did not disclose the flooding problem. *Id.* After closing, the buyers suffered substantial property damage as a result of water flowing on their property when the nearby storm drain became clogged. *Id.*

A jury returned a verdict in favor of the buyers and against the real estate agent and her employer for fraudulent concealment and violation of the CPA. *Id.* at 552. The jury apportioned 95 percent of the fault to the real estate agent and her employer, and the other 5 percent of fault to the seller. *Id.* We partially affirmed, determining that substantial evidence supported fraudulent concealment. *Id.* We reversed the CPA claim. *Id.* In reversing, we noted that RCW 64.06.060's language explicitly stated "'the practices covered by this chapter are not matters vitally affecting the public interest for the purpose of applying the [CPA].'" *Id.* at 553-54 (quoting RCW 64.06.060).

The *Svendsen* court granted the buyer's petition for review and reversed our dismissal of the CPA claim. *Id.* at 552, 560. In reversing, the *Svendsen* court noted three things. First, RCW 64.06.070 did not extinguish a buyer's common law or statutory cause of action. *Id.* at 556. Second, Washington courts had, prior to the enactment of chapter 64.06 RCW, repeatedly held that real estate agents are subject to CPA liability for not disclosing known material defects. *Id.* And third, the real estate agent was liable

19

under the CPA because she had knowledge of the flooding problem *independent* of her assisting the seller in completing the disclosure statement. *Id.* at 557.

In analyzing the public interest requirement of a CPA claim, the *Svendsen* court noted the four factors that a trier of fact must weigh:

> (1) [W]hether the acts were committed in the course of defendant's business; (2) whether the defendants advertised to the public; (3) whether the defendant actively solicited the plaintiff, indicating other potential solicitation of others; and (4) whether the parties occupied unequal bargaining positions.

*Id.* at 559. The court explained that none of the four factors are dispositive nor is it necessary that all four factors be present. *Id.* The court noted that the real estate agent's concealment was within the course of her business, and her employer advertised to the public, but there was no unequal bargaining position. *Id.* The *Svendsen* court held that such evidence was sufficient to establish the public interest requirement of the CPA. *Id.*

We similarly hold that the facts presented by Mr. Hauck are sufficient to satisfy the public interest requirement of his CPA claim. Construing the evidence and all reasonable inferences in his favor, Ms. Burns's concealment was within the course of her business, and Soleil advertised the property to the public when it listed the property for sale. Such solicitation resulted in at least 20 potential purchasers, including Mr. Hauck, learning of the property. We conclude the trial court erred in summarily dismissing Mr. Hauck's CPA claim against Ms. Burns and Soleil.

20

D.    BREACH OF CONTRACT CLAIM

Mr. Hauck argues he has shown a genuine issue of material fact as to each of his other claims, and therefore his breach of contract claim survives. He fails to explain what contract clause the Barrs supposedly breached. We will not consider such a vague argument on appeal. *See* RAP 10.3(a)(6) (requiring arguments to contain citations to legal authority and references to relevant parts of the record); *Marin v. King County*, 194 Wn. App. 795, 820, 378 P.3d 203 (2016) (finding that appellant's argument was too vague to permit review).

E.    ATTORNEY FEES AND COSTS ON APPEAL

The Barrs request attorney fees on appeal pursuant to a provision in the purchase and sale agreement. The provision provides, "if Buyer or Seller institutes suit against the other concerning this Agreement the prevailing party is entitled to reasonable attorneys' fees and expenses." CP at 54. The prevailing party in a contract action shall receive attorney fees and costs when the contract authorizes such an award. RCW 4.84.330. Subject to their compliance with RAP 18.1(d), the Barrs are awarded their reasonable attorney fees. However, the only basis for a fee award is successfully defending against Mr. Hauck's breach of contract claim. For this reason, their fee award is limited to those fees reasonably necessary in defeating the contract claim. *See Hume v. Am. Disposal Co.*, 124 Wn.2d 656, 672, 880 P.2d 988 (1994).

Ms. Burns and Soleil request attorney fees "pursuant to RAP 18.1 and 18.9." Br. of Resp'ts Soleil Real Estate and Burns at 47. They fail to provide any argument in

21

support of their fee request. We therefore deny their request. *See* RAP 18.1(b); *Stiles v. Kearney*, 168 Wn. App. 250, 267, 277 P.3d 9 (2012) (single sentence requesting attorney fees, without argument or citation to authority, fails to comply with mandatory requirements of RAP 18.1(b)).

Mr. Hauck requests reasonable attorney fees pursuant to the purchase and sale agreement. We affirm the dismissal of his contract claim. We therefore deny his request.

Because each party partially prevailed on appeal, we determine no party is entitled to an award of statutory costs on appeal.

## CONCLUSION

The trial court erred when it summarily dismissed Mr. Hauck's fraudulent concealment and CPA claims against the defendants. The trial court correctly summarily dismissed Mr. Hauck's breach of contract claim against the Barrs and his negligent misrepresentation claim against the defendants. We therefore reverse in part and affirm in part.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, A.C.J.

WE CONCUR:

Korsmo, J.

Siddoway, J.

22