# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

WGW USA, INC., a Washington Corporation,

        Appellant,

v.

LEGACY BELLEVUE 530, LLC, a Washington Limited Liability Company,

        Respondent.

LEGACY BELLEVUE 530, LLC, a Washington Limited Liability Company,

        Respondent,

v.

TIAN QING GUO, individually and the marital community of TIAN QING GUO and JANE DOE GUO,

        Appellants.

No. 72939-0-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: December 28, 2015

TRICKEY, J. — To succeed on a claim for negligent misrepresentation, based on a broker's failure to disclose material information, the complaining party must provide some evidence that the information was not readily ascertainable. Here, given that a commercial tenant had actual knowledge of a light rail expansion close to the property, the undisclosed facts about Sound Transit's plans were readily ascertainable. Therefore, the tenant is not entitled to rescind a lease based on alleged negligent misrepresentation. We affirm.

FACTS

William Nelson began working for Legacy Commercial, LLC in 2007. Legacy Commercial is the parent company of Legacy Bellevue 530, LLC (Legacy). Legacy owns the property at 530 112th Avenue N.E., in downtown Bellevue, Washington (the Property). Nelson's responsibilities included property management.

For years, Sound Transit and the city of Bellevue have been working together on the East Link Project, which will bring the link light rail, a commuter rail service, through Bellevue. In December 2008, Sound Transit published a draft Environmental Impact Statement (EIS) that identified a number of possible routes and included the Property as a "potentially affected parcel[]."[1] The EIS did not specify the likelihood of acquiring any particular parcel, or whether Sound Transit was contemplating a "partial" or "full" acquisition of any specific parcel.[2]

Sound Transit released its final EIS in July 2011. Sound Transit chose C9T (110th N.E. Tunnel Alternative) as the "preferred alternative" route at that time. That route planned to have the light rail cross the Interstate 405 overpass at the intersection of N.E. 6th Street and 112th Avenue N.E. The light rail would cross at the north side of the intersection; the Property is on the south side. The final EIS also included the Property as a "potentially affected parcel[]."[3] It still did not specify whether there would be full or partial acquisitions of specific properties. Later that

---

[1] Clerk's Papers (CP) at 176-77, 180.
[2] WGW asserted in its reply brief and during oral argument that there was, at that time, a 50 percent chance that Sound Transit would need to condemn the property. That claim is not supported by the record.
[3] CP at 184.

2

year, the city of Bellevue and Sound Transit signed a "Memorandum of Understanding," agreeing to route C9T.[4] All of these documents were available to the public online at Sound Transit's web site.

Nelson was aware of these developments. He attended at least one Sound Transit open house on the subject. He believed that there was not a real threat of Sound Transit needing to acquire the Property because the light rail path was always depicted as crossing the north side of the street and because it would have been very expensive for Sound Transit to acquire all the properties listed as "potential property acquisition[s]."[5]

During the fall of 2012, WGW USA, Inc. expressed interest in leasing the Property for a new restaurant. Tian Qing Guo is the president and sole shareholder of WGW USA, Inc. (WGW). WGW hired real estate broker, Maci Lam, to help with the negotiations. Nelson negotiated on behalf of Legacy.

Nelson notified WGW that Sound Transit intended to build a station two blocks away from the Property. Nelson suggested that the light rail would increase foot traffic, which would be good for business. Nelson did not mention the possibility of Sound Transit acquiring the Property.

Neither Guo nor Lam asked Nelson anything about the possibility of Sound Transit needing to condemn part or all of the Property. Nor did they conduct any independent research on the proposed light rail project.

Representatives from WGW and Legacy signed a 10-year lease in September 2012. The lease commenced on October 1, 2012. Guo personally

_____

[4] CP at 187-88.
[5] CP at 252, 255-56

guaranteed the lease.

In March 2013, Sound Transit contacted Legacy to inform it that an alternative plan for the light rail had been proposed. The new plan relocated the track to the south side of the N.E. 6th Street overpass. The Bellevue City Council approved Sound Transit's new plan in late April 2013. Because the track would run on the south side of N.E. 6th Street, Sound Transit would have to put at least one support column on the Property and, at least temporarily, condemn all or most of the Property's parking lot by the second quarter of 2017.

By this time it was clear that WGW's restaurant was not doing well. Guo decided to "cut [his] losses" and attempted to sell the business in April 2013.[6] WGW's business broker contacted Nelson in mid-May to discuss the property. Nelson informed the broker of Sound Transit's interest in the property. Because of the potential condemnation, prospective purchasers lost interest in the restaurant. The broker concluded that the business was not marketable. WGW then hired attorneys who discovered the history of Sound Transit's designation of the Property as a "potentially affected parcel[]."[7]

WGW failed to make its rent payment for June 2013. WGW notified Legacy that it was seeking rescission of the lease on June 18, 2013. Guo claimed he would never have entered into the lease if he had known about the Property's designation as a "potentially affected parcel[]."[8] On June 20, 2013, Legacy served WGW with a "Three Day Notice to Pay or Vacate."[9] WGW abandoned the

---

[6] CP at 265.
[7] CP at 180.
[8] CP at 401-02.
[9] CP at 48, 75.

4

Property. Legacy, offering better terms (specifically a lower security deposit and lower rent), leased the Property to XO Café, Inc.

WGW filed an action against Legacy for rescission of the lease based on Legacy's alleged fraudulent or negligent misrepresentation. Legacy cross-claimed against WGW for breach of the lease and against Guo for breach of his personal guaranty. The parties filed cross-motions for summary judgment. The court ruled in favor of Legacy on all motions. WGW and Guo timely appeal.

ANALYSIS

*Evidentiary Ruling*

WGW argues that several passages in Bruce Kahn's declaration, which it relied on in the summary judgment hearing and again in its brief on appeal, are admissible as expert opinions. We disagree.

The trial court granted Legacy's motion to strike portions of Bruce Kahn's declaration because some of his opinions were "improper legal conclusions" and "opinions based on speculation rather than evidence."[10] We conclude that the trial court properly excluded this evidence.[11]

Expert opinions are admissible if (1) the witness is "properly qualified," (2) the witness "relies on generally accepted theories," and (3) the witness's "testimony is helpful to the trier of fact." Philippides v. Bernard, 151 Wn.2d 376, 393, 88 P.3d 939 (2004); ER 702. An expert may testify as to matters of law, but experts may not testify as to conclusions of law. Hyatt v. Sellen Const. Co., Inc.,

---

[10] The trial court did not specify which portions it had stricken.
[11] We exclude, rather than strike, inadmissible materials submitted for consideration with a motion for summary judgment. Cameron v. Murray, 151 Wn. App. 646, 658, 214 P.3d 150 (2009).

40 Wn. App. 893, 899, 700 P.2d 1164 (1985); <u>Everett v. Diamond</u>, 30 Wn. App. 787, 791, 638 P.2d 605 (1981). Opinion testimony is improper when it explains what legal duties apply and whether parties have fulfilled them. <u>Hyatt</u>, 40 Wn. App. at 899; <u>Everett</u>, 30 Wn. App at 792. Expert testimony is also improper if its only basis is theoretical speculation. <u>Queen City Farms, Inc. v. Cent. Nat'l Ins. Co. of Omaha</u>, 126 Wn.2d 50, 103, 882 P.2d 703 (1994).

We review a trial court's evidentiary rulings made in conjunction with a summary judgment motion de novo. <u>Ross v. Bennett</u>, 148 Wn. App. 40, 45, 203 P.3d 383 (2008).

Here, Kahn is a licensed broker with 15 years of experience. WGW and Guo assert that the following testimony from Kahn's declaration and supplement declaration are admissible:

> I note that Legacy tries to distinguish between commercial and residential transactions in terms of a broker's duty to disclose material information. There is no such distinction. While a Form 17 disclosure may be required for residential transactions, an owner's broker's duty to disclose material information to either a prospective buyer or tenant remains the same, whether in a commercial or residential transaction.[12]

> When the transaction is a purchase, one can reasonably expect the prospective buyer to diligently investigate the property for possible problems, and almost always, there are contingencies to allow for the buyer to conduct a due diligence investigation. But when the transaction is a lease, all the prospective lessee is concerned with, beyond location and physical suitability of the property, is whether the landlord can provide peaceful and quiet enjoyment for the lease term. And if the landlord is negotiating a 10 year lease, such as the lease in question, then the landlord has impliedly represented that the landlord can provide peaceful and quiet enjoyment for the full term of the lease.[13]

---

[12] CP at 469.
[13] CP at 361.

My final comment concerns the form condemnation clause in the 9-17-12 lease. These clauses are intended to deal with condemnation situations that are unforeseen when the lease was negotiated. They are not meant to provide a shield to allow the property owner to intentionally withhold information that a public agency already has designated the leasehold property as a "potential property acquisition."[14]

These passages attempt to define the scope of a broker's legal duty to disclose information, a tenant's duty to investigate, and the legal significance of stock language in a lease. This is improper expert opinion testimony about legal matters. Additionally, this testimony is speculative. Kahn speculates about a tenant's interests and what a tenant and landlord meant by certain contractual language. Because this testimony contains improper legal conclusions and opinions based on speculation, we exclude it as inadmissible.

### Summary Judgment

WGW argues that the trial court improperly granted summary judgment in favor of Legacy on the breach of contract, breach of personal guaranty, and rescission claims. We disagree.

Summary judgment is appropriate when the moving party "show[s] that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." CR 56(c). We must "interpret all the facts and inferences therefrom in favor" of the nonmoving party. Lyons v. U.S. Bank Nat'l Ass'n, 181 Wn.2d 775, 783, 336 P.3d 1142 (2014).

We review summary judgment rulings de novo. Lyons, 181 Wn.2d at 783. We engage in the same inquiry as the trial court. Lyons, 181 Wn.2d at 783.

---

[14] CP at 361.

*Rescission*

WGW seeks to rescind its lease with Legacy on the grounds of "negligent and/or fraudulent misrepresentation."[15] Legacy contends that WGW cannot maintain an action for rescission because WGW is in default of the lease.

A tenant in default may maintain an action for rescission if it clearly establishes such facts as would excuse performance. Eberhart v. Lind, 173 Wash. 316, 319, 23 P.2d 17 (1933). Negligent misrepresentation provides an excuse for nonperformance and grounds for rescission. Bloor v. Fritz, 143 Wn. App. 718, 738, 180 P.3d 805 (2008). Therefore, if WGW is able to sustain its negligent or fraudulent misrepresentation claims, its default would not prevent it from pursuing rescission.[16] We consider those claims next.

WGW argues that Nelson negligently misrepresented facts material to the lease negotiations by failing to disclose them. In general, Nelson did not disclose that Sound Transit had designated the Property as one that it might need to acquire and that all of these plans would not be final for another couple years. We disagree that it was negligent misrepresentation not to disclose this information.

Failure to disclose material information may constitute misrepresentation of that information. A claim of negligent misrepresentation may rest on an omission by one party when that party has a duty to disclose information. Alexander v. Sanford, 181 Wn. App. 135, 177, 325 P.3d 341 (2014), review granted, 181 Wn.2d

---

[15] Appellants' Br. at 38 (bold face omitted).
[16] Legacy contends that the threat of condemnation was not a sufficient basis to rescind the contract. See Lind, 173 Wash. at 319-20. However, WGW is not alleging that it is entitled to rescission based on the possibility that the Property will be condemned; it is alleging that Legacy misrepresented that possibility.

1022, 339 P.3d 634 (2014), dismissed, No. 90642-4 (Wash. May 8, 2015). Failure to disclose that information is treated as if the party "had represented the nonexistence of the matter that [it] has failed to disclose." Richland Sch. Dist. v. Mabton Sch. Dist., 111 Wn. App. 377, 385, 45 P.3d 580 (2002) (quoting RESTATEMENT (SECOND) OF TORTS § 551 (1977)). Some statutes create such a duty. Colonial Imports, Inc. v. Carlton Nw., Inc., 121 Wn.2d 726, 732, 853 P.2d 913 (1993).

Licensed real estate brokers have several mandatory disclosure requirements. Under RCW 18.86.030(1), a "broker owes to all parties to whom the broker renders real estate brokerage services the following duties: . . . (d) [t]o disclose all existing material facts known by the broker and not apparent or readily ascertainable to a party."

Here, Nelson was performing "real estate brokerage services," because he was negotiating a lease of real property. RCW 18.85.011(2), (16)(b), (17), .331; RCW 18.86.010(11).[17] Nelson did not disclose the following information that WGW alleges is material:

> (1) that Sound Transit had designated the Legacy Property as a potential acquisition for the chosen route through downtown Bellevue; (2) that Sound Transit's depiction of the light rail line on the north side of the NE 6th Street overpass was subject to change, as much more engineering work was required; (3) that even though Sound Transit had shown the rail line as on the north side of the NE 6th Street overpass and the Legacy Property is on the south side, Sound Transit may need to condemn the Legacy Property for construction purposes; and (4) no final decision would be made until 2013.[18]

---

[17] CP at 45.
[18] Appellants' Br. at 32.

As noted above, Nelson did not have a duty to disclose information that was readily ascertainable. Thus, we must consider whether this information was readily ascertainable.

The statute does not define "readily ascertainable." We may use a standard dictionary to determine the phrase's plain meaning. State v. Sullivan, 143 Wn.2d 162, 175, 19 P.3d 1012 (2001). "Readily" means "with fairly quick efficiency: without needless loss of time : reasonably fast" or "with a fair degree of ease: without much difficulty : with facility." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1889 (2002). Webster's Dictionary defines "ascertain" as to "find out or learn for a certainty (as by examination or investigation) : make sure of: DISCOVER." WEBSTER'S at 126. Therefore, information is readily ascertainable to a party if the party could discover it quickly or easily.

Facts are ascertainable if they are publically available. Legacy provided undisputed evidence that all this information was a matter of public record. Therefore, we hold that there is no genuine dispute that the undisclosed information was ascertainable. The question is whether the information was *readily* ascertainable.

WGW offers several reasons for its failure to investigate Sound Transit's potential impact on the Property. These arguments seem to be acknowledgements that WGW could have found the information, but that it was not *readily* ascertainable.

WGW claims that it would have been "extremely difficult" for Guo or Lam to discover Sound Transit's designation of the Property as a potentially affected

10

parcel. It relies on Legacy's characterization of the information as a "needle in a haystack in thousands upon thousands of pages on Sound Transit's website."[19] But, WGW did not introduce any evidence of the difficulty in independently discovering the undisclosed information over the Internet or with some other method of inquiry. As the plaintiff, it is WGW's burden to produce *some* evidence that the information was not readily ascertainable. See Young v. Key Pharm., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989).

WGW also contends that the information was not readily ascertainable because there was no reason to investigate. While the statute does not require a reason to investigate, having a reason to investigate a particular subject makes that investigation easier and faster. Therefore, a party's knowledge, or lack of knowledge, about a subject may impact whether material facts are readily ascertainable.

The two cases WGW cites provide limited support for this interpretation of "readily." The first, Bloor, involved a negligent misrepresentation claim based on a broker's failure to disclose material information under RCW 18.86.030. 143 Wn. App. 718, 733, 180 P.3d 805 (2008). There, the undisclosed information was published in a news article. Bloor, 143 Wn. App. at 726. The plaintiffs were able to discover the house's history of drug manufacturing once they heard rumors that the house was known as a "drug house." Bloor, 143 Wn. App. at 726. Thus, the information was likely ascertainable before the plaintiffs purchased the house. But, because the defendant argued solely that he did not know about the defect, the

---

[19] Appellants' Br. at 36.

court did not address whether the undisclosed information was readily ascertainable. Bloor, 143 Wn. App. at 733.

The second case, Sorrell v. Young, analyzes a similar situation, in which the seller of a lot was required to disclose defects that were not "apparent or readily ascertainable." 6 Wn. App. 220, 225-27, 491 P.2d 1312 (1971). There, the plaintiff did not realize that the lot he was purchasing had fill. Sorrell, 6 Wn. App. at 221. The defect was not apparent and the plaintiff did not make any inquiries about the existence of fill. Sorrell, 6 Wn. App. at 221. WGW argues that the reason the existence of the fill was not readily ascertainable, even though it could have been discovered by a soil inspection, was that the plaintiffs had no reason to inspect the soil. The court did not say anything to this effect in the opinion. Still, it held that the plaintiff provided sufficient evidence that the existence of fill was not "apparent or readily ascertainable" without discussing how difficult it would have been for the plaintiff to discover the fill before purchasing the property. Sorrell, 6 Wn. App. at 225-26.

However, WGW's situation is distinguishable from that of the Bloor and Sorrell plaintiffs, who had no prepurchase knowledge of the defects in their properties. WGW knew about the light rail expansion. Nelson told Lam and Guo that Sound Transit was expanding the light rail and would be constructing a station just blocks away from the Property. Nelson opined that the station would be good for business because it would increase pedestrian traffic.

WGW argues that it did not have a reason to investigate the effects of the Sound Transit expansion because Nelson always cast the light rail expansion in a

12

positive light. This is not persuasive. It is obvious that the construction of a light rail station in close proximity to a restaurant could have both negative and positive impacts.[20] Once WGW knew about the light rail expansion, it had a reason to look into the matter further.

Finally, WGW contends that the potential for condemnation was not readily ascertainable because WGW was relying on Nelson's statutory duty to disclose material facts. WGW's argument is circular because Nelson did not have a statutory duty to disclose the information if it was readily ascertainable. Therefore, WGW must show that the information was *not* readily ascertainable before it relies on Nelson's statutory duty to disclose it.

In short, Legacy's evidence, that WGW knew about the light rail expansion in general, and that the undisclosed information was a matter of public record, supports its position that all the undisclosed information in this case was readily ascertainable. WGW has not introduced evidence that raises a genuine issue of material fact on this issue.

Thus, Nelson did not have a statutory duty to disclose that information, regardless of whether it was material. Accordingly, we need not address whether the undisclosed information was material. Because Nelson did not have a duty to disclose Sound Transit's designation of the Property as potentially affected, the fact that he did not disclose it does not support a claim of negligent

---

[20] WGW also relied on Kahn's declaration in support of its claim that it had a reduced duty to investigate because WGW was a potential lessee, not a purchaser. As discussed above, this portion of Kahn's declaration is inadmissible because it includes improper legal conclusions and opinions based on speculation. WGW has not offered any legal authority for that distinction.

13

misrepresentation.

WGW next argues that Nelson's partial disclosures are tantamount to fraudulent misrepresentation. Because WGW did not properly raise this argument until its reply brief, we do not consider it.

In its opening brief, WGW refers to its claim as "[n]egligent and/or [f]raudulent [m]isrepresentation."[21] But WGW does not discuss the elements of fraudulent misrepresentation until its reply brief.[22] In its reply brief, WGW raises the argument that Nelson's "half-truths" and opinions amounted to affirmative misrepresentations for the first time.[23] We do not consider arguments raised for the first time in a reply brief. Axess Int'l Ltd. v. Intercargo Ins. Co., 107 Wn. App. 713, 719, 30 P.3d 1 (2001) ("An issue raised and argued for the first time in a reply brief is raised too late.").

Finally, WGW bases its misrepresentation claims against Legacy on the failure of Nelson, Legacy's alleged agent, to disclose material information. Legacy asserts that WGW fails to meet its burden of showing an agency relationship, or that Nelson's knowledge is imputed to Legacy. WGW relies on common law principles of agency. It is not clear that WGW properly pleaded Legacy's vicarious liability to the trial court. WGW's complaint was not designated in the clerk's papers.[24] Legacy asserts that WGW did not plead vicarious liability or offer any

---

[21] Appellants' Br. at 38 (boldface omitted).

[22] Appellants' Br. at 38; Appellants' Reply Br. at 15-25.

[23] Appellants' Reply Br. at 18-20. In its opening brief, WGW states that the information Nelson provided was misleading and inaccurate, but the claims it makes are based on his "[f]ailure to [d]isclose." Appellants' Br. at 38-40 (boldface omitted).

[24] RAP 9.6(b)(1)(C) requires the party seeking review to include the complaint in the clerk's papers. However, we have a sufficient record to decide the case on other grounds.

proof that Nelson was an agent of Legacy in that complaint. Because we hold that Nelson did not violate a statutory duty, we do not need to decide whether he was Legacy's agent.[25]

We affirm the trial court's dismissal of WGW's claim for rescission because the undisclosed information was readily ascertainable.[26]

### Default and Breach of Personal Guaranty

WGW's only response to Legacy's motion for summary judgment on its claims that WGW defaulted on the lease and that Guo breached his personal guaranty, is that Legacy negligently or fraudulently misrepresented material facts. As discussed above, we affirm the dismissal of those claims against Legacy. Accordingly, WGW and Guo have no defense to Legacy's claims. We affirm the trial court's granting of summary judgment to Legacy on the claims that WGW defaulted on the lease and Guo breached his personal guaranty.

### Attorney Fees

WGW argues that it is entitled to fees on appeal. It relies on its lease with Legacy, which contained a clause that allows the prevailing party to collect attorney fees. Because WGW is not the prevailing party, it is not entitled to attorney fees.

---

[25] Additionally, both parties appear to assume that common laws of agency apply. Neither party addresses the statutory limitations on vicarious liability and imputed knowledge contained in Washington's Real Estate Brokerage Relationships chapter. RCW 18.86.090, .100. These statutes depart from the common law of agency.

[26] WGW initially brought its action for rescission based on both a failure of consideration and the negligent or fraudulent misrepresentation claim argued before this court. CP at 142. We do not consider a failure of consideration argument because WGW has not raised it on appeal.

We affirm.

_____
Trickey, J

WE CONCUR:

_____
Appelwick, J

_____
Becker, J